(No. 23274

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* THE FOREMAN STATE TRUST AND SAVINGS BANK *et al.*—(GEORGE J. BERRESHEIM, Trustee, Appellant.)

*Opinion filed February 14, 1936—Rehearing denied April 10, 1936.*

MARKMAN, DONOVAN & SULLIVAN, and URION, BISHOP & SLADKEY, (HOWARD F. BISHOP, of counsel,) for appellant.

OTTO KERNER, Attorney General, (T. J. SULLIVAN, and A. C. McHENRY, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The Department of Public Works and Buildings, appellee herein, filed a petition in the circuit court of Lake county to condemn 4.651 acres out of a tract of 74 acres of land owned by appellant for a part of the right of way for State Bond Issue Route 68. The jury found the value of the land taken to be $1050 and that there was no damage to the land not taken. A motion for a new trial was overruled, judgment was entered upon the verdict and this appeal followed.

Appellant contends that the parcel of land taken was not valued as part of the entire property; that the jury was not properly instructed; that appellee's witnesses were not qualified to testify to the value of the property, and that the verdict of the jury is contrary to the manifest weight of the evidence.

The whole tract of land owned by appellant consists of 74.62 acres. It is bounded on the west by Waukegan road, on the north by the North Shore Electric railroad, on the east by the Chicago and Northwestern railroad, and on the

south by land which has been subdivided, but which has not been improved. It is located about one-half mile from the city limits of Lake Forest, and about one mile from the village of Lake Bluff. The railroad on the north is eight feet, and the one on the east is three or four feet, higher than appellant's land. The right of way through appellant's land will be 1260 feet long and 160 feet wide, and about 600 feet south of the north boundary line of appellant's property, it will incline downward so that an underpass may be constructed under the electric railway. After the construction of the highway appellant's property will consist of two tracts, twenty acres east, and fifty acres west, of the four-lane highway.

Appellee's witness, Oscar Soderquist, had lived in Waukegan for twenty-eight years. He had been in the real estate business for seven years and during the last year he had made over three hundred appraisals of Lake county property. He had appraised the Brewerton place, two miles west of appellant's land on Rockland road, but had appraised no property near appellant's land. He was familiar with the fair cash market value of land in that vicinity, and was of the opinion that the value of appellant's land for its highest and best use was $150 per acre. His testimony was stricken on motion of appellant, but was allowed to stand, when he later withdrew his motion.

Another witness for appellee, Lester W. Coons, lived at Glen View, twenty-five miles south of Waukegan. He had been a real estate broker for twelve years. His principal business was selling farm and acreage land in Lake, McHenry, Kane and Cook counties. He had sold a farm four miles south of appellant's land, on Waukegan road, in September, 1934, and stated that that farm was much like the land under discussion. The Knollwood Country Club is directly west of appellant's land, and there is a subdivision between Rockland road and the Elgin, Joliet and Eastern railroad, but it is unimproved, except for some gas

stations on Rockland road and a roadhouse that burned
down a few days before the trial. There were two pieces
of unimproved land between this property and Lake For-
est, but the witness did not know whether they had been
subdivided or not. He said that there were farms and one
estate east of appellant's land. Coons stated that the high-
est and best use of the property was for farming and that
it was worth $125 an acre, considered as part of the en-
tire tract.

Russell H. Edwards testified for the Department that
he lived in Waukegan and had been a real estate broker
for twelve years. He specialized in subdividing and sell-
ing city and farm property. He had had very little experi-
ence in buying and selling farm property during the last
two years, but previous to that he sold three or four farms
a year. He was familiar with the land in question, and
with land values in that neighborhood. He was of the
opinion that the highest and best use of which appellant's
land was capable was for farming, and that it was not the
best farm land at any price. According to him it was
worth $150 an acre, and his estimate included $60 an acre
for cutting and dividing it into five-acre tracts for homes
for men so they could work in town and make part of
their livings on the tracts. The location of the property
near Lake Bluff and Lake Forest, and the transportation
facilities furnished by the nearby railways, were factors
considered in forming his opinion that the land would be
suitable for subdivision into five-acre tracts. Edwards
stated that he considered the 4.651 acres as part of the en-
tire tract in arriving at his valuation, but he did not con-
sider that the land taken was as valuable as it would be
if it lay directly across from the Knollwood Country Club,
because there were fifty acres of land between it and the
country club. The court overruled appellant's motion to
strike the testimony of Edwards, made on the ground he
had not considered the land taken as a part of the whole.

James A. Reeves of Waukegan, who had been a real estate broker since 1912, testified for the Department. He had sold both farm and city land and was familiar with the tract in question. He stated that the highest and best use for appellant's land was for farming as it was then being used. He said that the tract taken was worth $150 per acre considered as a part of the whole farm. There were a lot of "gentleman farms" in the community, but appellant's land was not suited for such use. This witness had recently sold a farm of similar character and size and lying seven miles north of appellant's property. He did not consider the tract taken as being directly across the road from the Knollwood Country Club, because it was three-eighths of a mile east of the club. He did not consider the prices recently paid by the United States government for property a short distance north of appellant's property, in arriving at his opinion.

A. E. Suter, another witness for appellee had been engaged in the real estate business in Libertyville in Lake county since 1925, and prior to that time he had been in the same business in Chicago. He was treasurer and director of the Federal Savings and Loan Association in Libertyville, and managed, sold and financed both farm and city property in Lake county. He was acquainted with the land proposed to be condemned, and it was his opinion that its highest and best use was for farming, and that there was a possibility of it being used for small homesteads. As farm land he valued it at $125 an acre, but said that if certain improvements, the nature of which he did not specify, were made, the land would be worth $200 an acre for small home sites. In arriving at the value of $125 an acre he considered the part taken as being part of the entire tract, the improvements on the property, its location, shape and general conditions and the transportation facilities. This witness was paid to testify in the case.

The appellant, George J. Berresheim, testified that he is a trustee holding title for a syndicate which bought the land in 1924. He lived in Chicago, but testified that he was familiar, in a general way, with the property in the vicinity of Lake Forest and Lake Bluff. He was of the opinion that the highest and best use of the tract would be for estates, and that it was worth $2000 per acre on the date the petition was filed. He took into consideration the surrounding property and transportation facilities, such as the railroad station at the corner of Waukegan and Rockland roads on the property. This witness stated he had no prospective customers, and that the value he placed on the property was speculative. He had no idea as to whether the property would be sold as an estate in one or twenty years, and admitted that the use of the property as an estate was "a highly remote proposition" at the present time.

Appellant's witness, M. C. Lackie, testified that the property was suitable for estate purposes, because there were other estates in that vicinity. However, he had no opinion as to the highest and best use on the date the petition herein was filed, and gave no opinion as to value. He said there was some uncertainty when the property could be divided into small estates, and doubted whether he would advise such action within ten years.

G. W. Kunstman testified for appellant that he had been a real estate broker in Chicago for twenty-five years. He is a member of the Chicago Real Estate Board and the National Association of Real Estate Boards. He had figured in many important real estate transactions and appraisals in Cook county, but the only experience he had had in Lake county was in connection with the purchase of the site for the Great Lakes Naval Training Station. That purchase was finally made in 1922. He testified that he was familiar with appellant's land. He said that it lay at the southeast corner of Waukegan and Rockland roads, and is about two miles from Lake Michigan. The district

south of this land has been developed largely for country estates ranging in size from two acres up to several hundred. The land is about fifty-five minutes from Chicago on the North Shore Electric railway. To the north and east the land has been subdivided all the way to Lake Michigan. On the west is the Knollwood Country Club. To the north there are country estates. The entire district south from appellant's property to the county line and beyond, is developed for country estates. He testified that he was familiar with values of land surrounding this property, and had acquainted himself with other sales in that territory. He was of the opinion that the highest and best use of the appellant's land was for country estates, varying in size from five to ten acres and more. He stated that there are three elements that make land suitable for country estates, i. e., accessibility, privacy, and the nature of the surroundings. This tract has all three elements. He was of the opinion that its fair cash value, as a part of the whole, is $1500 per acre or $7000 for the 4.651 acres. He was of the opinion that the land not taken was damaged $24,250. He said that the twenty-acre tract on the east would be damaged one-half, or $15,000. The five acres adjoining the highway on the west, near the proposed subway, would be damaged $2500 and the remaining acres west of the proposed highway would be damaged $6750. The total damage for land taken and damage to land not taken would be $31,250. He said the highway would make the east twenty acres inaccessible, and so the land would be damaged one-half. On cross-examination he admitted the Northwestern railroad, which is a freight line, would not add to the accessibility or privacy of the land, and that the passenger railway on the north would not add to its privacy. The subdivisions to the north and east were made from 1924 to 1928 and 1929, and some houses had been built, but there were many vacant lots. He did not say that the land would be used for country estates, but

thought that would be its best use in the natural course of its development.

Joseph C. Witzler, a Chicago real estate man of eighteen years' experience, testified for appellant. He had sold the property in question twice, and was the person who had sold it to appellant. He considered that its highest and best use was for estates. In arriving at his opinion he took into consideration its surroundings, accessibility and privacy, and its location across from the Knollwood Country Club. There are estates around it in all directions, and the land directly to the south of appellant's property is owned by a syndicate of five or six members of that club. He was not asked to give an opinion as to its value.

Ernest H. Lyons, of Kenilworth, testified for appellant that he was a real estate broker of thirty-two years' experience in Chicago. He specializes in subdivisions and development of high-class property, mostly on the north shore. He was a member of the Chicago Real Estate Board and the State and National boards. For twenty years he and his friends have invested money in real estate adjoining golf clubs, and in high-class subdivisions where the improvements were put in and the property was prepared for immediate use. Some of his activity had been in Lake county, and he was familiar with the tract in question, having had it listed for sale in his office by Mr. Packard, a former owner. He had been over the property numerous times. He was of the opinion that its highest and best use was to hold it for development as country estates or smaller estates. He took into consideration his knowledge and experience in developing north shore and Indian Hill property. He also took into consideration the area and contour of the property, its lack of trees, and the disadvantages caused by its proximity to the railroads. He placed a value of $112,000 on the 74-acre tract and $7000 on the 4.651-acre tract that was taken, and was of the opinion that the land not taken was damaged $17,500, by

reason of the increased traffic and the consequent lessened privacy. He thought the twenty acres that would be east of the highway would be damaged $15,000 and that the five acres near the subway on the west would be damaged $2500. He thought there was some damage resulting from cutting the tract in two, but could not estimate it.

Lester W. Coons and Arthur E. Suter were called by the Department to rebut the appellant's evidence of damage to land not taken, and both testified that in their opinion the land not taken would not be damaged.

Appellant first contends that the property taken was erroneously valued by the Department's witnesses as a separate piece of property rather than as a part of the entire property. He relies upon *City of Chicago* v. *Cruse,* 337 Ill. 637, and *Illinois, Iowa and Minnesota Railway Co.* v. *Humiston,* 208 id. 100, 107. In the first case the petitioner offered evidence as to the value of the lots sought to be condemned on the theory that they were separate from the entire tract. The respondent's theory was that all of the lots constituted one entire tract, and should be valued as such, and we held that the trial court erred in refusing to give a requested instruction upon the property owner's theory. In the second case we said that the improvements on a farm add to the value of the vacant property, and that the owner was entitled to the value of the part sought to be taken, as used and occupied in connection with the whole farm. We said on page 107: "In other words, the strip of land, sought to be taken for a right of way, has a special value to the owner in connection with the whole of the farm with the improvements upon it, which is greater than the mere value of the bare land without the improvements."

Appellant urges that under these holdings one part of his land was as valuable as the other, and so the Department's witnesses were not considering the part taken as

being a part of the entire tract, because they said they did not consider the part taken to be as valuable as a similar tract directly across from the Knollwood Country Club. Nothing said in the *Cruse* and *Humiston cases* goes that far. Because improvements on one part of a tract add to the value of the vacant land, when used in connection with the improvements, it does not follow that the vacant land is as valuable as the land which has the improvements on it, nor does it mean that every part of the vacant land is as valuable as every other part. The effect of the testimony of the witnesses for the Department was, that in arriving at their estimates of the value of the land taken, they considered the special value it had to appellant in connection with the entire tract and whatever improvements there were upon it. This was proper and was all they were required to consider. This contention must be overruled.

The second contention is that the court erred in giving the following instruction:

"(17) Although you may believe from the evidence that on January 3, 1935, the highest and best use of the property in question sought to be condemned might possibly at some remote future date be for subdivision for home sites, still if you further believe from the evidence that such use depends upon vague or uncertain conditions or contingencies, and that such proposed use is merely speculative, then you have no right to consider at all any evidence of its adaptability for such use."

Appellant insists that this instruction does not give the jury a chance to consider future possibilities, if those possibilities affect the present market value of the land. This identical instruction has been sustained against similar criticisms in *Crystal Lake Park District* v. *Consumers Co.* 313 Ill. 395, and when the same point was urged in *Sanitary District of Rockford* v. *Johnson,* 343 Ill. 11, we overruled the contention, without discussion, on the authority of the earlier case. This point need not be further considered.

Appellant's third contention is that the witnesses for the appellee were not qualified to testify as to value or as to the amount of the damages to land not taken. He cites no authority for this proposition, but argues the relative merits of his witnesses over those for appellee. We have set forth the qualifications of all the witnesses, and we must presume that the jury took them into consideration in weighing their testimony.

In *Crystal Lake Park District* v. *Consumers Co. supra,* we said: "It is insisted that the court erred in permitting witnesses for the petitioner, not qualified, to give their opinions as to the market value of the property. Seventeen witnesses testified to such values, and showed themselves to be qualified under the rules declared by this court. [Citing cases.] They were acquainted with the property and had knowledge of values, acquired either by valuing real estate for loans, being in the real estate business, as an owner of property near by, assessing real estate, or in similar ways. It is said, however, that none of them had had any experience in the subdivision of lake property. * * * It was no duty of the appellee to adopt the appellants' theory as to the use to which the land was best adapted, but it was its privilege to produce such proper testimony with reference to that use and the value of the land as it saw fit."

In *City of Geneseo* v. *Schultz,* 257 Ill. 273, we said: "The question of the qualification of witnesses as to the value of property rests very largely in the discretion of the trial court." In that case we held that a cashier of one of the local banks, who had never bought or sold property in the immediate neighborhood, was competent. In the case at bar the circuit court of Lake county held that the witnesses for appellee were competent and this holding is justified by *Crystal Lake Park District* v. *Consumers Co. supra,* and by *Kankakee Park District* v. *Heidenreich,* 328 Ill. 198, in which the court said: "While none of the witnesses for appellee had sold property similar to the tract

in question, they showed that they had general experience in and about the city of Kankakee in buying and selling real estate and that they knew the general trend of values and uses to which property was being put in the community. All the witnesses were competent."

In the case at bar there was no abuse of the trial court's discretion in judging the qualification of the witnesses. All witnesses who expressed an opinion as to the highest and best use to which the land could be put and as to its value were men who were familiar with real estate, being either real estate brokers or appraisers. There is no merit in appellant's third contention.

His last contention is that the verdict is contrary to the weight of the evidence. It is well settled that the damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting, the jury views the premises, and the amount of compensation awarded is within the range of the evidence, unless the verdict appears to have been a clear and palpable mistake or the result of passion and prejudice. (*Forest Preserve District* v. *Dearlove*, 337 Ill. 555.) The jury awarded $1050 for the 4.651 acres taken for the right of way. This was at the rate of $225 an acre, or is about $100 more than the lowest valuation testified to by a Department witness. It is apparent that the jury, after viewing the premises and hearing the evidence, concluded that appellant's witnesses were testifying to speculative values. Appellant, in testifying to a valuation of $2000 per acre, admitted that he did not know when he would be able to get it. He said it might be one year or it might be twenty. M. C. Lackie was of the opinion that the land was suitable for estate purposes, but doubted whether he would recommend that it be subdivided within ten years. Five witnesses for the Department testified that the highest and best use of the property was for farm property or for use as small homesteads, and that the value of the land taken was from $125

to $200 an acre and that there was no damage to the land
not taken. Five witnesses testified for appellant that the
highest and best use of this property was for estate pur-
poses. Only three of them, however, testified as to the
fair cash value of the land to be taken. The owner thought
the land was worth $2000 per acre as stated above; G. W.
Kunstman thought that the land taken was worth $7000,
and that there was $24,250 damage to land not taken.
Ernest H. Lyons testified to the same value of $7000 for
land taken but thought that there was $17,500 damages
to the land not taken. We cannot say that the jury, after
viewing the premises and considering the proximity of the
railroads which bounded the north and east sides of the
tract, the location of the land and its surroundings, was
not warranted in returning the verdict which it did. There
is nothing in the record that indicates that the verdict was
the result of mistake or of passion and prejudice.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*