15 Ill. App.3d 269 (1973)
304 N.E.2d 57
THE DEPARTMENT OF BUSINESS AND ECONOMIC DEVELOPMENT, Petitioner-Appellee,
v.
PIONEER TRUST AND SAVINGS BANK et al., Defendants-Appellants.
No. 72-258.
Illinois Appellate Court  Second District.
November 15, 1973.
*270 Gerald M. Sheridan, Jr., of Wheaton (Charles J. Myler, of counsel), for appellants.
William J. Scott, Attorney General, of Chicago (Thomas J. Banbury, Special Assistant Attorney General, of counsel), for appellee.
Judgment affirmed.
Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:
Defendants appeal from an order of the circuit court of Kane County denying defendants' Petition and Traverse filed almost three years after the entry of an order for "quick-take" in eminent domain proceedings.
The principal questions present are (1) whether section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) applies to eminent domain proceedings, (2) whether defendants' Petition and Traverse were barred by a stipulation in the "quick-take" hearing as to jurisdiction, acceptance of preliminary just compensation, and an adverse ruling on an earlier Motion and Traverse filed by them, and (3) whether the "quick-take" orders entered three years earlier are void for lack of jurisdiction.
*271 On January 2, 1969 the Department of Business and Economic Development of the State of Illinois ("Department" or "State") filed a petition for condemnation of defendants' vacant land in Kane County, Illinois, consisting of 49.2 acres ("Parcel 169 (1)") to be turned over to the United States Atomic Energy Commission ("AEC") for the construction of a high energy BEV Particle Accelerator. (See Ill. Rev. Stat. 1967, ch. 127, par. 47.21). Parcel 169 (1) is at the southeast corner of Wilson and Kirk roads and in the northwesterly corner of the 6800 acre tract in Kane County, Illinois, acquired for the National Accelerator Laboratory (NAL). On January 10, the Department filed its motion for the immediate vesting of title pursuant to sections 2.1 through 2.10 of the Eminent Domain Act (Ill. Rev. Stat. 1967, ch. 47, pars. 2.1 through 2.10 as amended). At a hearing on January 24th the defendants entered into a stipulation with the Department "as to the three main necessities under the Act." Among other specific facts stipulated to were that one of the objects of the Department is to encourage and stimulate economic growth throughout the State and the encouragement and location of new plants from outside the State; that the State of Illinois tried to secure the accelerator for Illinois; that 229 sites were submitted to AEC by 49 other States; Illinois made an offer previously given by other States to furnish the land cost-free to AEC and the Legislature passed an Act authorizing an offer (See Ill. Rev. Stat. 1967, ch. 127, par. 47.23); that the total amount of money which will be spent for construction of the project on the 6800 acres required by AEC was estimated at $250,000,000 and operating expenses of about $60,000,000 per year; and that the proofs submitted by the stipulation "were sufficient for the court to grant quick-take orders thereon."
On February 11th a further stipulation was entered into between the Department and the defendants that $196,800 constituted preliminary finding as to just compensation for defendants' parcel. Accordingly, on that date the "quick-take" order was entered, finding that the Department had authority to exercise the right of eminent domain, that property rights sought to be taken are subject to the exercise of said right by petitioners, such right is not being improperly exercised, and that reasonable necessity exists for the "quick-take" proceeding, and directing the Department to deposit 125% of that sum, namely, $246,000 with the Clerk of the Circuit Court of Kane County.[1] On March 4th and 11th, 1969, further orders were entered vesting title in the Department and authorizing distribution of $196,800 as therein set forth; the funds were accordingly accepted and withdrawn by the defendants. On March 18th, the State of Illinois deeded the parcel to the United States AEC.
*272 More than two years later, on March 30th, 1971, defendants filed a Motion and Traverse based largely on the alleged failure of the Department to attempt in good faith to agree with defendants on compensation. The Department filed its Motion to dismiss setting forth the stipulation as to preliminary just compensation and defendants' withdrawal of that amount as well as defendants' failure to appeal within 30 days from the order for immediate vesting of title. On March 5, 1971 the trial court entered an order allowing the Department's motion to dismiss and denied the defendants' Motion and Traverse.
On November 29, 1971 defendants filed a Petition and Traverse, in part under Section 72 of the Civil Practice Act, alleging in substance that at the time of filing the condemnation petition the Department knew that prior thereto the State had entered into an agreement with AEC whereby AEC would grant to the State a 250-foot wide easement along the western boundary of the accelerator site for the proposed North-South Highway or Fox Valley Freeway; that the Department failed to disclose such fact and thereby fraudulently concealed from the defendants that "the property was being taken contrary to law and without regard to actual needs of the AEC"; and that defendants had no knowledge of the existence of such agreement until about November of 1971. Defendants prayed that (1) the condemnation petition be dismissed, (2) the orders of February 11th and March 4th, 1969, be vacated, (3) the conveyance of the property to the United States be declared void, and (4) defendants be authorized to tender and return to the Clerk of the Circuit Court the funds withdrawn by them as a result of the "quick-take" orders.
The Department's motion to dismiss on the ground of lack of jurisdiction because of defendants' failure to appeal within 30 days of the entry of the "quick-take" orders was denied by the trial court on December 8th, 1971. The Department thereafter filed its answer to defendants' Petition and Traverse followed by the Department's reply. The Petition and Traverse was then set for hearing.
After hearing the evidence the trial court on May 15th, 1972, entered an order finding that defendants failed to prove any fraud committed against them, that the "quick-take" procedure complied with statutory requirements, and defendants' failure to appeal from the orders of February 11th and March 4th, 1969 barred any relief, and denied the Petition and Traverse and the relief therein requested.
We consider first the question of the applicability to eminent domain proceedings of Section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) which allows relief from judgments and decrees more than thirty days after the entry thereof but within a two year period. It is true as contended by the Department that the "quick-take" statute (Ill. Rev. Stat. 1969, ch. 47, par. 2.2) specifies that such order "shall be *273 a final order, and an appeal may be taken therefrom by either party within thirty (30) days * * * but not thereafter, unless extended by the court for good cause shown." The only case cited by the Department is Department of Public Works & Bldgs. v. Dust (1960), 19 Ill.2d 217, 166 N.E.2d 36, which holds that the time for appeal cannot be extended beyond thirty days after the "quick-take" orders are entered. In the case at bar the Petition and Traverse does not constitute an appeal. It was filed under Section 72 of the Civil Practice Act to allow relief from a final judgment after the time for appeal expired. Section 72 expressly provides that all relief heretofore obtainable for attacking judgments either by common law or by equitable proceedings "shall be available in every case, by proceedings hereunder, regardless of the nature of the order, judgment or decree from which relief is sought or of the proceedings in which it was entered. There shall be no distinction among actions at law, suits in equity and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable."
 1 Section 1 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 1) provides,
"The provisions of this Act apply to all civil proceedings both at law and in equity, except in * * * eminent domain * * * in which the procedure is regulated by separate statutes. In all those proceedings the separate statutes control to the extent to which they regulate procedure but this Act applies as to matters of procedure not so regulated by separate statutes."
There being no procedure provided in the Eminent Domain Act for relief from a final judgment after the time for appeal has expired, section 72 of the Civil Practice Act would be clearly applicable.
 2, 3 The Department contends that the Petition and Traverse were barred by (1) defendants' stipulation at the "quick-take" hearing in January, 1969, that the proof submitted was sufficient to permit condemnation, (2) defendants' acceptance of preliminary just compensation in March, 1969, and (3) defendants having filed an earlier Motion and Traverse on March 30, 1971, which had been dismissed by the court on the State's motion. Stipulations between parties are enforced by the courts unless there is a showing that the stipulation is a result of fraud or is contrary to public morals. (People v. Spring Lake Drainage and Levee District (1912), 253 Ill. 479, 492, 97 N.E. 1042; Kazubowski v. Kazubowski (1968), 93 Ill. App.2d 126, 134, 235 N.E.2d 664, cert. den., 393 U.S. 1117, 22 L.Ed.2d 122.) After citing the Spring Lake Drainage and Levee District case and other authorities, the court in First National Bank of Chicago v. Whitlock (1945). 327 Ill. App. 127, 139, 63 N.E.2d 659 at 664, stated succinctly,
"It is clear from the foregoing authorities that where the parties *274 to a case have either stipulated or otherwise consented to the entry of a decree they are bound thereby and that a consent decree, which is acceptable to the parties themselves as a determination of the controversy and is sanctioned by the court, has the same force and effect as a judgment or decree entered after a contest, unless the consent of the complaining party was procured by fraud."
Defendants' Petition and Traverse alleged fraud and the trial court properly allowed defendants an opportunity to make an appropriate showing thereof. While the defendants had accepted preliminary just compensation in 1969, their Petition and Traverse requested authority and an order to tender and return it to the Clerk of the court. The cases cited by the State are inapposite; none of them involve acceptance of preliminary just compensation or an allegation of fraud as in the instant case. In arguing that defendants are barred from filing the Petition and Traverse, because of their earlier Motion and Traverse which had been dismissed, the State cites only Department of Public Works & Bldgs. v. Dust, supra. That case was not concerned with a petition under Section 72 of the Civil Practice Act which the defendants filed in the instant case.
Finally, we consider the defendants' contention that the "quick-take" orders entered in February and March of 1969 were void for lack of jurisdiction, and further, that the court erred in finding that defendants failed to prove that any fraud was committed against them in connection with the condemnation or the immediate vesting of title. Defendants contend that the court was without jurisdiction to entertain a condemnation petition by the Department for property other than that to be used as a BEV Particle Accelerator in that defendants' property might be used for highway purposes. What defendants are really arguing is that the Department had no authority to condemn land "for the Tollway under the guise of being necessary for the NAL." Rephrasing the problem, the contention is basically that inasmuch as the Department did not have authority to condemn that portion of the Accelerator site, which might be used for Freeway purposes, the court orders of condemnation were void. With this we do not agree.
The only evidence presented at the hearing on the second petition and Traverse under Section 72 was that presented by the defendants. The evidence can be summarized as follows: The Fox Valley Freeway to connect Interstate Route 55 and Elgin has been under consideration since about 1957. In 1964-1965 there was newspaper publication of a set of plans concerning such Freeway. In 1970, after "corridor hearings" were conducted relating to possible alternate corridors for the Fox Valley Freeway, H.W. Lochner Inc., an engineering consultant firm hired by *275 the State Highway Division, made a "corridor report" recommending a corridor which would utilize a portion of defendants' property.
The Fox Valley Freeway has not yet been approved. It would be subject to approval by the Federal Highway Administration on environmental and other matters as required on all highways for which federal funds are expended. While in 1970-1971 funds were appropriated by the State for acquisition of land for the Freeway, no funds are presently appropriated therefor. When and if land acquisition begins for the Freeway would depend upon when funds become available based on state-wide highway priorities.
In the summer and fall of 1968 negotiations took place between AEC and the Department culminating in the written "Statement of Understandings" which was approved by the Governor of Illinois in late December, 1968. That Statement, in addition to providing for the acquisition by the State and transfer to AEC of title ("without expense" to AEC) of about 6800 acres of land (including Parcel 169 (1)) under certain conditions, including relocation at the State's expense of power transmission lines, a petroleum products pipe line, and natural gas transmission lines, provided that the AEC will grant to the State or its designees, without charge, a "250-ft. wide easement along the western boundary of the site for the proposed State north-south highway." It also provided for various additional easements including a 390-foot wide easement for the relocation of power transmission lines, petroleum products line, and natural gas lines. The easement for the highway was included as the result of a request from the Illinois Director of Public Works to the Director of the Department for the reservation of an easement for use for such highway.
In 1971 the city of Batavia entered into negotiations with AEC for a 75 year lease of three acres in the north-west corner of Parcel 169 (1) for a city fire station at the southeast corner of Wilson and Kirk roads. Negotiations have not been concluded. One of the matters unresolved between the parties is the question of getting easements and leases from the city of Batavia relative to access to the Fox River for the withdrawal of "cooling water" needed by NAL in its operation. There was an open meeting in Batavia City Hall in September, 1968, with the Mayor of Batavia, an engineer from Geneva, and a Mr. Nary, Vice President of Furnas Realty Company, concerning the highway easement.
Robert Casey, a beneficial owner of Parcel 169 (1) and a practicing lawyer in Geneva, testified that he did not learn of the "Statement of Understandings" between the Atomic Energy Commission and the State of Illinois until some time in October, 1971. And only at that time did he discover that his property was subject to being used by easement from *276 the Atomic Energy Commission to the State of Illinois for Freeway purposes.
The trial court held that the defendants failed to prove that any fraud was committed against them in the condemnation of Parcel 169 (1) or in the immediate vesting of title thereto in the Department. Defendants contend that this was error and that the evidence adduced proved fraud in the concealment by the Department's silence as to the reservation of the highway easement in the "Statement of Understandings." They rely principally on City of Chicago v. Nodeck (1903), 202 Ill. 257, 67 N.E. 39. The court there held that the intentional act of the city in assessing property owners for paving a portion of the street which a railroad company was legally bound to pave was a fraud against the property owners. That case is not in point. Neither is Forest Preserve District v. Christopher (1943), 321 Ill. App. 91, 52 N.E.2d 313, where the lessor-condemnee was guilty of bad faith to his lessee by failing to disclose impending condemnation proceedings, where the lease for a term of years provided for the lessee's improvement of the premises and construction of a restaurant building which the lessee proceeded to do.
 4 While the Department had knowledge of the reservation of the highway easement, its failure to volunteer this knowledge does not constitute fraud either on the defendants or on the court. Before the silence of the Department could constitute a fraud in the concealment there would have to be a showing either of an intentional withholding of the information when it was asked for or the use of some device to mislead. (Zambetiz v. TWA (1966), 72 Ill. App.2d 192, 201, 219 N.E.2d 98; Kohl v. Lindley (1866), 39 Ill. 195, 201.) There was no evidence in the case at bar of any deliberate attempt to conceal any information. The planning of the Fox Valley Freeway began in 1957, there was publication of alternate plans in 1964-1965, and an open meeting in 1968 at the Batavia City Hall attended by various parties. Mr. Casey or any of the defendants could have made further inquiries about it at any time to ascertain where the proposed Freeway would be likely to pass. Its exact location is still to be decided. In spite of the recommendation that the Freeway pass through the easement reserved in the "Statement of Understandings," there are still many obstacles and uncertainties before the final determination and selection of its location including approval by the Federal Highway Administration and appropriation of funds by the State for the acquisition of other land for the Freeway. Indeed, there is no absolute certainty here that the reservation for the Freeway will ever be utilized.
 5, 6 The statutory authorization for condemnation by the Department *277 granted in section 47.21 of the Civil Administrative Code (Ill. Rev. Stat. 1967, ch. 127, par. 47.21) reads in part as follows:
"The Department of Business and Economic Development is authorized, with the consent in writing of the Governor, to acquire * * * in the manner provided by `An Act to provide for the exercise of the right of eminent domain' * * * the fee simple title * * * to any and all lands, buildings and grounds * * * required for construction, maintenance and operation of a high energy BEV Particle Accelerator by the United States Atomic Energy Commission, and for such other supporting land and facilities as may be required or useful for such construction * * *."
The necessity for taking by eminent domain for the accelerator laboratory, an important public use, is a legislative question, and its determination is within the discretion of the corporate body vested with power to exercise the right; its decision will be conclusive in the absence of a clear abuse of the power granted. (Trustees of Schools v. First National Bank of Blue Island (1971), 49 Ill.2d 408, 414, 274 N.E.2d 56; Trustees of Schools v. Sherman Heights Corp. (1960), 20 Ill.2d 357, 360, 169 N.E. 2d 800.) The mere fact that a portion of the 6800 acres of the Atomic Energy Commission land may be used for Freeway purposes is not an abuse of that power.
 7 The defendants were not unconstitutionally deprived of just compensation, due process and equal protection of the law. At the trial on the merits, defendants will have adequate opportunity to prove the highest and best use of the property and its true value at the time of taking. Department of Public Works v. Butler (1958), 13 Ill.2d 537, 552, 150 N.E.2d 124.
The judgment of the circuit court of Kane County is therefore affirmed.
Affirmed.
SEIDENFELD and T. MORAN, JJ., concur.
NOTES
[1] It may be noted that a 1969 Amendment to sec. 2.1 of the Eminent Domain Act requires the deposit to be made with the County Treasurer instead of the Clerk of the court.