FOREST PRESERVE DISTRICT OF WILL COUNTY, Plaintiff-Appellant, v. MARQUETTE NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellants.

Third District   No. 3—90—0186

Opinion filed February 14, 1991.—Rehearing denied March 19, 1991.

Kroesch & Kavanagh Law Office, Ltd., of Joliet (Joseph H. Singer, of counsel), for appellant.

Edward Petka, of Plainfield, for appellees.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Forest Preserve District of Will County, Illinois (hereinafter District), appeals the trial court's order dismissing its condemnation action. We affirm.

In 1978, the District filed a similar, if not identical, action to condemn the subject property. The circuit court of Will County dismissed the action with prejudice pursuant to stipulation by the parties.

On October 25, 1989, the District filed the present action to condemn the subject property. Defendants, Marquette National Bank, as trustee, Chicago Title & Trust Company, as trustee, and unknown owners (hereinafter defendants), filed a traverse and motion to dismiss based on the following defenses: *res judicata*; lack of good faith in attempting to agree to compensation; lack of necessity; and abuse of governmental discretion.

The trial court conducted a two-day evidentiary hearing on defendants' traverse and motion to dismiss. At the hearing, the District called as its only witness its assistant director, Michael Pasteris, the District's principal negotiator for the subject property. He indicated that the subject property was not in excess of the District's needs and the condemnation action was promulgated by the District's board. In 1977, the District obtained a comprehensive appraisal of the subject property in which the appraiser opined the property was worth $4,000 per acre or $900,000 for the entire tract (approximately 234 acres). In 1978, the District offered defendants $3,500 per acre

for the subject property. The negotiations terminated in 1979 when the District dismissed its condemnation action with prejudice.

No further transactions occurred concerning the subject property and the District until late 1987, when the defendants contacted Pasteris about the donation of a small portion of the subject property to the District. Over the next five months, he met and negotiated with defendants after the District offered to purchase the entire subject property or a portion thereof. Defendants were interested in subdividing the property and had already taken steps to effect same. Pasteris was aware at this time that the subject property was being rezoned from agricultural to residential use. On May 5, 1988, the District's board advised the defendants it was no longer interested in acquiring the subject property. Thereafter, the property was rezoned to residential use, a final plat approval for subdividing was requested, and lots were offered for sale.

On May 20, 1989, the District again became interested in acquiring the subject property. Pasteris was instructed by the District to obtain a quick appraisal since time was of the essence. The District employed an appraiser; however, Pasteris admittedly failed to advise him the property had been rezoned and the subdivisions were about to be developed and proposals for purchase were pending.

The District made an initial offer of $760,000 for the subject property and, upon refusal, increased the same to $800,000. This offer was not acceptable to the defendants. In order to buy more time, the District objected to the Will County board's final plat approval.

The District approved the condemnation action the same day the county board voted for approval of the final plat. The District urged the county board to table its approval until the conclusion of the court proceedings since, without final plat approval, the subject property could not be developed. In the meantime, it was revealed the District offered an owner of adjacent property $78,000 for 10 acres of the land contiguous to the subject property. The county board then delayed its vote on approving the final plat.

At the evidentiary hearing, the defendants called two witnesses, Russ Demaray, an owner of the subject property, and Edward Masters, the District's attorney at the time of the earlier condemnation action, and now a Will County circuit judge. Masters stated that he prepared the stipulation and dismissal order in the original case at the District's request. The District abandoned its interest in the subject property because of the cost of unrelated projects. Masters was given instructions from the District to dismiss the condemnation action so it could never again be the object of a condemnation claim. Masters ad-

vised the District of the consequences of a dismissal with prejudice, *i.e.*, that it could not pursue the property by condemnation again, but it persisted with its request. Masters then had the dismissal with prejudice order entered by the trial court in the original case.

Defendants next called Russ Demaray, an owner of the subject property. He had taken steps to develop his property, which involved a considerable outlay of money. He continued with the engineering and development of the property simultaneous to negotiating with the District about a purchase of all or part of the subject property. Based on a letter received by Demaray in May 1988 confirming the District's lack of interest in the property, he petitioned the county board, of which a committee approved rezoning and final plat. Defendants, including Demaray, expended approximately $200,000 developing this property during the following year upon learning the District was no longer interested in acquiring the subject property.

In May of 1989, the defendants received a letter from the District indicating its renewed interest in acquiring the property. The defendants already received development approval and the only remaining item necessary to commence full development was a majority vote from the county board approving the plat. The District then obtained a delay from the county board and voted to initiate condemnation proceedings.

Demaray stated that individual lots within the subject property were selling for $45,000 per half-acre and a small lot was even purchased for $38,000. Furthermore, a person built a home on the lot within the subject property valued at $180,0000, exclusive of the value of the lot.

The trial court allowed defendants' motion to dismiss and traverse, finding undue hardship and manifest injustice to the defendants.

The District raises several issues on appeal: The trial court erred in granting defendants' traverse and motion to dismiss; that the District made a *bona fide* attempt to agree on compensation prior to fling suit, *res judicata* is inapplicable to the present action and therefore should not bar this action; and that the trial court's decision was against the manifest weight of the evidence.

Was the trial court's order granting defendants' traverse and motion to dismiss proper? We believe it was.

■■ ■ The standard of review applicable to eminent domain proceedings is whether the trial court abused its discretion, acted arbitrarily, exceeded the bound of reason, and ignored the applicable law. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.)

It was evident from the record that the trial court did not abuse its discretion by dismissing the District's condemnation action. The District vacillated between purchasing and involuntarily acquiring the subject property for over 10 years; it offered ridiculously low offers as compensation for same; and it knowingly and voluntarily prohibited itself from further pursuing a condemnation action for the subject property by dismissing the earlier condemnation action "with prejudice." In addition, the District did not demonstrate that the acquisition of the subject property was a necessity. The trial court correctly ruled pursuant to applicable law and facts that the District's action caused undue hardship and manifest injustice on the defendants. At this point, defendants were entitled to the use and enjoyment of the property without unreasonable interference from the District.

■ Was the trial court's finding that the District acted unreasonably and in bad faith and did not make a *bona fide* attempt to agree with defendants to a fair compensation against the manifest weight of the evidence? No.

■ The trial court decision should not be disturbed on review unless it is against the manifest weight of the evidence. (*Trustees of Schools of Township No. 37 v. First National Bank* (1971), 49 Ill. 2d 408, 274 N.E.2d 56.) In other words, an opposite conclusion must be reached. The trial court's finding was consistent with the facts and evidence presented. According to *Department of Transportation v. Walker* (1980), 80 Ill. App. 3d 1039, 400 N.E.2d 956, an attempt at agreement as to compensation must be both *bona fide* and made in good faith by the acquiring authority before condemnation proceedings commence. The record supports the finding the District acted unreasonably and in bad faith and failed to make a *bona fide* attempt to agree with defendants to a just compensation. The last appraisal admittedly was a "windshield" appraisal compared to the comprehensive appraisal in 1977, in which the earlier appraiser estimated the value of the property at $4,000 per acre. The current appraiser was unaware the property had been rezoned and the final plat approval was imminent. The offer made by the District in 1989 was actually less than the offer submitted in 1978. In the meantime, the defendants had the property rezoned, the final plat proposal was about to be approved, offers were pending, substantial capital was invested, parcels had been tentatively sold, and the District purchased contiguous property for an amount over twice the amount per acre offered for the subject property. Lastly, with local governmental approval ready to issue, the District attempted to and obtained multiple delays of county board action, further delaying the defendants from developing the subject property.

It is evident that immediately prior to the submission of the present offer, the District overlooked important considerations, *e.g.*, the timeliness of the comprehensive appraisal, the legal consequences of the changes made *vis-a-vis* the subject property, *i.e.*, rezoning and final plat approval, and the further capital undertaking by the defendants, which all independently and collectively justify and support the trial judge's finding.

Finally, does the former judgment of dismissal entered in 1979 bar this action? Yes.

It is undisputed that the earlier action was dismissed with prejudice by stipulation of the parties. The District was aware of the consequences of such dismissal; however, the testimony of Edward Masters was that the District persisted in a dismissal with prejudice. Stipulations are considered and enforced by courts unless there is a showing that the stipulation is pursuant to fraud or contrary to public policy. (*Department of Business & Economic Development v. Pioneer Trust & Savings Bank* (1973), 15 Ill. App. 3d 269, 304 N.E.2d 57.) The doctrine of *res judicata* applies to eminent domain actions as long as the requirements of *res judicata* are satisfied: identity of parties, subject matter and cause of action. (*La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 337 N.E.2d 19.) The circumstances of the previous dismissal lead to a clear understanding and conclusion that *res judicata* applies to this situation and bars the present action accordingly.

Based upon the aforementioned reasons, the circuit court of Will County is hereby affirmed.

Affirmed.

BARRY and GORMAN, JJ., concur.