THE CITY OF SPRINGFIELD, Plaintiff-Appellee, v. WEST KOKE MILL DEVELOPMENT CORPORATION *et al.*, Defendants-Appellants.

Fourth District   No. 4—99—0472

Argued February 23, 2000.—Opinion filed April 14, 2000.—
Rehearing denied May 23, 2000.

COOK, P.J., dissenting.

Richard J. Wilderson (argued) and April G. Troemper, both of Graham & Graham, Ltd., of Springfield, for appellants.

Gary A. Brown (argued) and John W. Morse, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In August 1997, plaintiff, the City of Springfield (the city), filed a petition to condemn certain property owned by defendant West Koke Mill Development Corporation (Koke Mill) and mortgaged to defendant First of America Bank-Springfield, N.A. (First of America), to make roadway improvements. In April 1999, after a trial, a jury awarded Koke Mill $54,925 as just compensation. Koke Mill and First of America appeal, arguing that (1) the city's appraisal witness used methods that violated the so-called "unit rule" in evaluating the condemned property, and (2) the city failed to make a *bona fide* effort to negotiate a price prior to bringing this suit. We affirm.

## I. BACKGROUND

Throughout this litigation, Koke Mill and First of America have been represented by the same attorneys and, in every way relevant for the issues presented in this appeal, have acted as though they were a single party. To simplify our discussion, we will refer to both defendants simply as Koke Mill.

Koke Mill owns an approximately square, six-acre tract of land in Springfield. The property's southern border runs along Iles Avenue, and its eastern border runs down the center of Koke Mill Road. Prior to this litigation, a 20-foot-wide, perpetual right-of-way easement for Koke Mill Road ran along the eastern edge of the property. The strip of land next to that easement was used primarily for drainage. In its August 1997 complaint, the city sought to condemn a 50-foot strip along Iles Avenue and a 60-foot strip along Koke Mill Road, including the existing right-of-way, for the purpose of widening the two roads.

In November 1998, the city filed a motion to amend its complaint, which the trial court ultimately granted. In the amended complaint, the city continued to seek the 60-foot strip to widen Koke Mill Road but no longer sought the strip along Iles Avenue. The city sought just under one acre of Koke Mill's six-acre lot.

At the April 1999 jury trial, the city called Gary Larson, a professional real estate appraiser, to testify regarding (1) what the city should pay Koke Mill for the land the city took, and (2) how he made that determination. He used the "market" approach, which entailed researching recent sales of property he deemed comparable to Koke Mill's six-acre tract. He then determined a value for the portion of the property to be condemned in the following manner. First, Larson arrived at a value for the entire six-acre parcel by comparing its physical characteristics and location to the properties he found in his market research. Second, using the same technique, he determined the value of the remainder property—that is, the Koke Mill property that Koke

Mill had left after the city's taking. He based his valuation of the remainder, in part, on his opinion that the portion to be taken by the city contributed less to the value of the overall parcel than the portion remaining did. Finally, Larson subtracted the value of the remainder from the value of the whole to arrive at the amount of just compensation for the portion the city was condemning. Larson recommended $31,500 as just compensation.

Koke Mill moved to strike Larson's testimony, arguing that his appraisal method was contrary to law. The court denied Koke Mill's motion.

Charles Johnson, another professional real estate appraiser, testified for Koke Mill. Like Larson, Johnson researched comparable transactions in the area of the subject property. However, Johnson used that information to determine a per-square-foot price for Koke Mill's six-acre tract. He then calculated the value of the portion to be condemned by multiplying the same per-square-foot figure by the number of square feet that the city sought. The resulting figure was $146,496.

On this evidence, the jury awarded Koke Mill $54,925, as stated. This appeal followed.

## II. ANALYSIS

### A. Valuation of Partial Takings

First, Koke Mill argues that the trial court erred by refusing to strike Larson's appraisal testimony. Specifically, Koke Mill points out that, in determining the value of the remainder property, Larson took into account his opinion that the area to be condemned contributed less to the value of the overall parcel than other portions of that property. Koke Mill argues that Larson's methodology violated the rule governing partial condemnation cases, which requires that the area to be condemned be evaluated as a part of the original lot and not as a separate parcel. We disagree.

■ Article I, section 15, of the Illinois Constitution provides, in relevant part, that "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law." Ill. Const. 1970, art. I, § 15. The Eminent Domain Act (Act) provides the means through which a public body may compel the transfer of property in exchange for the compensation required by our constitution. 735 ILCS 5/7—101 through 7—129 (West 1998). The purpose of condemnation proceedings is to place the landowner, or condemnee, in the same economic position as if no condemnation occurred, not to improve the condemnee's financial status. *People ex rel. Director of Finance v. Young Women's Christian Ass'n*, 74 Ill. 2d 561, 572, 387 N.E.2d 305,

311 (1979); *Department of Transportation v. Chicago Title & Trust Co.*, 303 Ill. App. 3d 484, 495, 707 N.E.2d 637, 645 (1999).

■ A public entity that seeks to condemn private property must pay fair market value, defined as "the amount of money [that] a purchaser, willing but not obligated to buy the property, would pay to an owner[,] willing but not obliged to sell[,] in a voluntary sale." 735 ILCS 5/7—121 (West 1998). In a partial condemnation case, that is, in a case where the condemnor seeks only a portion of the condemnee's land, applying this definition has occasionally proved difficult. Typically, the condemnor in such a case will seek a narrow strip along a roadway or some other oddly shaped parcel, which may contribute significant value to the landowner's original parcel, but which has limited economic utility as a separate piece of property. Two different values for the same piece of land result. The first is the price this separate tract would draw on the open market, and the second is the value that the parcel provided to the original landowner because of its relationship to the rest of the owner's land.

■ Because the purpose of eminent domain proceedings is to place the condemnee in the same economic position after the condemnation as before (*Chicago Title*, 303 Ill. App. 3d at 495, 707 N.E.2d at 645), the correct choice between these two values is the one that reflects what the landowner lost, and that is the value of the land as its relates to the rest of the original parcel. *Department of Transportation v. HP/Meachum Land Ltd. Partnership*, 245 Ill. App. 3d 252, 256, 614 N.E.2d 485, 488 (1993); see also *Chicago & Evanston R.R. Co. v. Blake*, 116 Ill. 163, 168-69, 4 N.E. 488, 491 (1886) (approving a jury instruction that states the rule); Illinois Pattern Jury Instructions, Civil, No. 300.44 (3d ed. 1995) (hereinafter IPI Civil 3d No. 300.44) (current version of instruction from *Blake*). The rule derived from *Blake* and represented in IPI Civil 3d No. 300.44 prevents an appraisal witness from discussing or taking into account the irregular shape of the area to be condemned. See *Department of Public Works & Buildings v. Griffin*, 305 Ill. 585, 587-88, 137 N.E. 523, 525 (1922).

The goal, in partial condemnation cases, is to provide compensation that is "just" in the sense that it places the landowner in the same economic position after the condemnation as before. Because the landowner possessed title to a given parcel, with a given value, prior to the taking, it follows that "just compensation" is the difference between the value of the landowner's original parcel and the value of the remainder. Thus, rather than concentrating on what was taken, the focus should be on what remains.

■ Determining the amount of just compensation in a partial condemnation case can be done using the "before-and-after" method

of appraisal (see 4A J. Sackman, Nichols on Eminent Domain § 14.02[1][b], at 14-31 (rev. 3d ed. 1999)), which involves the following three steps. First, the appraiser should evaluate the entire parcel as it exists prior to the condemnation. Second, the appraiser should evaluate what will remain of the property after the condemnation is complete. Third, the appraiser should arrive at the value of the area condemned by subtracting the value of the remainder from the value of the original entire parcel.

Larson, the city's appraisal witness, used the before-and-after method to reach his conclusion. Koke Mill takes issue with the manner by which Larson apportioned the overall parcel's value between the area to be condemned and the remainder. Larson testified that his valuation of Koke Mill's complete parcel was equivalent to $4.80 per square foot. However, Larson's valuation of the remainder property was higher than that, and his valuation of the portion taken was lower than that. He explained that he assigned this proportionally reduced value to the area to be condemned because part of that property was encumbered by a permanent easement for the existing roadway, whereas the rest of it, in Larson's opinion, was suitable for use only as a drainage area.

Citing *City of Chicago v. Anthony*, 136 Ill. 2d 169, 176, 554 N.E.2d 1381, 1384 (1990), and *Department of Public Works & Buildings v. Lotta*, 27 Ill. 2d 455, 456-57, 189 N.E.2d 238, 240 (1963), Koke Mill contends that Larson's accounting for differences in value between the area condemned and the remainder was improper. According to Koke Mill, "An owner is entitled to have the entire property valued on a unit basis, *i.e.*, by value per square foot, taking into consideration the good and the bad and arriving at a homogenous unit value for the entire property." *Anthony* and *Lotta* do not support Koke Mill's argument. In *Lotta*, 27 Ill. 2d at 456-57, 189 N.E.2d at 240, the supreme court wrote the following:

> "[T]he whole does not necessarily equal the sum of the parts. The value of unimproved land, adaptable for any use, may diminish, as land, when improved by the construction of a building and so committed to a particular use. For similar reasons, the construction of a building may not produce an increment in value equal to its cost, since the improvement may not be desirably situated. To avoid misleading and confusing the jury, the evidence may properly be confined to the value directly at issue, that is, the value of the improved land as a whole."

In *Anthony*, 136 Ill. 2d at 176, 554 N.E.2d at 1384, the supreme court, coining the term "unit rule," ruled similarly regarding the valuation of land that could potentially produce lease income.

Unlike the parcel in *Lotta*, Koke Mill's property did not include improvements, leaseholds, or any other appurtenances that would add value to the raw land. The sort of valuation problems discussed in *Lotta, Anthony*, and the related line of cases simply do not exist in the case at bar. Moreover, none of the cases Koke Mill cites—nor any other authority—stand for the proposition that a landowner is entitled to have his property evaluated on a strict per-square-foot basis.

■ To put Koke Mill's theory of valuation in perspective, one need only consider the result Koke Mill's proposed rule would impose if the city were seeking to condemn the portion of the property that is currently the remainder and to leave as the remainder that portion that it has sought to condemn. After this hypothetical condemnation, Koke Mill would be left with a 20-foot-wide strip of land underlying an existing highway, which would be subject to a permanent right-of-way easement, and a 40-foot-wide drainage area next to the highway. The city, meanwhile, would have acquired all of the level, dry land, which is set back from the road and suitable for construction or any other appropriate use. Under Koke Mill's proposed rule, the compensation the city would pay in this hypothetical case would be based only on the square footage of the land to be condemned and would not account for the fact that the remainder would be economically worthless. Such a result not only would be unfair, it might not satisfy the constitutional mandate that property owners be justly compensated whenever their property is taken for public use.

In *Meachum*, the Second District Appellate Court addressed a situation similar to the hypothetical condemnation discussed above. In that case, the land at issue consisted partly of wetland and partly of nonwetland. *Meachum*, 245 Ill. App. 3d at 253, 614 N.E.2d at 486. The Illinois Department of Transportation condemned a portion consisting almost entirely of nonwetland and argued that compensation should be only an amount proportional to the area it was taking, regardless of quality. The appellate court rejected that argument and held that the landowner was entitled to just compensation, meaning it should be paid for whatever economic loss it incurred, even if that loss was disproportional to the area of land condemned. *Meachum*, 245 Ill. App. 3d at 256, 614 N.E.2d at 488.

The *Meachum* court therefore rejected the precise argument that Koke Mill raises, an argument our supreme court has also rejected:

"Appellant urges that *** one part of his land was as valuable as the other, and so the Department's witnesses were not considering the part taken as being a part of the entire tract, because they said they did not consider the part taken to be as valuable as a similar tract [elsewhere in the same parcel]. Nothing said in [our prior de-

cisions] goes that far. Because improvements on one part of a tract add to the value of the vacant land, when used in connection with the improvements, it does not follow that the vacant land is as valuable as the land which has the improvements on it, nor does it mean that every part of the vacant land is as valuable as every other part. The effect of the testimony of the witnesses for the Department was, that in arriving at their estimates of the value of the land taken, they considered the special value it had to appellant in connection with the entire tract and whatever improvements there were upon it. This was proper and was all they were required to consider." *Department of Public Works & Buildings v. Foreman State Trust & Savings Bank*, 363 Ill. 13, 21-22, 1 N.E.2d 75, 80 (1936).

Similarly here, Larson considered all he was required to consider, namely, the relationship between the parcel to be condemned and the remainder of Koke Mill's property. Accordingly, the trial court properly refused to strike his testimony.

## B. *Bona Fide* Effort To Negotiate

Last, Koke Mill argues that the trial court erred by denying its motion to dismiss the suit on the ground that the city had failed to make a *bona fide* effort to negotiate prior to filing its complaint. For the reasons that follow, we disagree.

### 1. *Background*

In March 1998, after the city filed its original complaint, Koke Mill filed a "traverse and motion to dismiss." Koke Mill urged several grounds for dismissal, including that the city had failed to make a *bona fide* effort to negotiate the price of the property. However, Koke Mill did not attach any affidavits or other exhibits to that motion. In August 1998, the trial court conducted a hearing on Koke Mill's motion. The record on appeal does not contain transcripts of any pretrial hearings, but a docket entry indicates that the court denied Koke Mill's motion after hearing counsel's argument.

In December 1998, after the city filed its motion to amend the complaint, Koke Mill filed a motion entitled, "response and objection to plaintiff's motion to amend complaint for condemnation and motion to dismiss." In that motion, Koke Mill argued that the trial court should not allow the amendment because of the expense and delay such an amendment would cause. Koke Mill further stated the following:

"[The c]ourt has previously heard these [d]efendants' argument that the [c]ity has failed to negotiate in good faith as required *** by the [Act (735 ILCS 5/7—101 through 7—129 (West 1996 & Supp.

1997))] and case law. (The only monetary offer the [c]ity has ever made for the subject property was by letter of \*\*\* [c]orporation [c]ounsel, \*\*\* offering $200, copy attached)."

Koke Mill attached a letter bearing the letterhead of the city's corporation counsel, in which counsel offered $200 for the property. The letter concluded as follows:

"If you or your attorney care to discuss this offer, you may call me \*\*\*. Unless I hear from you within seven \*\*\* days \*\*\*, I shall assume that you have rejected this offer[,] and condemnation proceedings will be instituted \*\*\*."

In December 1998, the trial court conducted a hearing on the city's motion to amend its complaint and took the motion under advisement pending the city's amending its ordinance to match the amended complaint. The court's docket entry makes no mention of Koke Mill's request that the case be dismissed, but indicates that certain other matters would be "held under advisement pending negotiations of the parties." The city later amended its ordinance, and the court allowed the related amendment to the complaint.

## 2. *The Condemnee's Motions To Dismiss*

■ To support its argument that the city failed to make a *bona fide* effort to negotiate the property's purchase price, Koke Mill cites *Forest Preserve District v. Marquette National Bank*, 208 Ill. App. 3d 823, 567 N.E.2d 635 (1991), and *Lake County Forest Preserve District v. First National Bank*, 200 Ill. App. 3d 354, 558 N.E.2d 721 (1990). These cases hold that, as a condition precedent to filing a condemnation petition, the would-be condemnor must engage in a good-faith effort to reach an agreement with the property owner on an amount of compensation. *Marquette National Bank*, 208 Ill. App. 3d at 827, 567 N.E.2d at 637; *First National Bank*, 200 Ill. App. 3d at 356, 558 N.E.2d at 723. Koke Mill raised this point twice in the trial court: first, in its March 1998 motion to dismiss, and second, in its August 1998 motion challenging the city's amended complaint. We conclude that the record does not show that the trial court committed any error.

Koke Mill did not support its original motion to dismiss with any evidence of the city's alleged lack of good faith; the trial court had only Koke Mill's bald accusation when the court made its ruling. When a motion to dismiss is based on facts not apparent from the face of the complaint, the movant must support its motion with affidavits or other evidence. 735 ILCS 5/2—619(a) (West 1998). The trial court did not err by denying Koke Mill's unsupported motion to dismiss.

Koke Mill did attach the city's "take-it-or-leave-it" $200 offer to the motion Koke Mill filed in response to the city's amended complaint. Although that motion was entitled, in relevant part, a "motion

to dismiss," we deem it to be a motion to reconsider because Koke Mill was apparently just asking the court to revisit its previous ruling.

A court has discretion not to reconsider a prior ruling based on new evidence absent some showing that the new evidence was unavailable earlier. *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 617, 663 N.E.2d 1, 9 (1995). We need not decide whether the court would have abused its discretion had it denied Koke Mill's motion to reconsider because the court never did so. It never ruled upon the motion at all, and the record contains no indication that Koke Mill ever asked for a ruling. " 'A movant has the responsibility to obtain a ruling from the court on his motion to avoid waiver on appeal.' " *People v. Stack*, 311 Ill. App. 3d 162, 176, 724 N.E.2d 79, 90 (1999), quoting *People v. Redd*, 173 Ill. 2d 1, 35, 670 N.E.2d 583, 599 (1996); see also *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 430, 551 N.E.2d 640, 647 (1990) (applying same rule in civil proceedings). Accordingly, Koke Mill has forfeited this issue.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent. I would reverse the condemnation award and dismiss the petition to condemn because of plaintiff's failure to make a *bona fide* offer prior to instituting these proceedings.

The power of the government to take the private property of an individual is a tremendous power, one capable of great abuse. The legislature has seen fit to limit that power by requiring that the taking body attempt to seek the agreement of the parties prior to commencing a condemnation action. 735 ILCS 5/7—102 (West 1998). The taking body is required to make a *bona fide* offer prior to commencing the action. *City of Chicago v. Harrison-Halsted Building Corp.*, 11 Ill. 2d 431, 434, 143 N.E.2d 40, 43 (1957). The taking body does not have the option of "playing hardball." The taking body may not wait to see whether defendant is willing to hire attorneys, engage experts, and defend a condemnation action before it places its offer on the table.

In this case, plaintiff's corporation counsel, by letter dated August 7, 1997, offered the amount of $200, based on the appraisal of Wayne Briggs. After initiating condemnation proceedings, plaintiff abandoned Briggs and submitted the appraisal of Randy Johnson, who testified at trial that the property was worth $31,500.

Plaintiff makes two arguments in this court, first that the $200 offer was a *bona fide* offer to which defendants never responded, and second, that the $31,500 was offered prior to trial. Whatever method Briggs used to compute the $200 value, even if that figure was not suggested to him by plaintiff, the $200 offer clearly was not a *bona fide* offer in this case. On the second issue, it is not sufficient that a *bona fide* offer is made before trial. The law is clear that a *bona fide* offer is a precondition to the filing of the suit. *Harrison-Halsted*, 11 Ill. 2d at 434, 143 N.E.2d at 43.

The majority apparently recognizes that a *bona fide* offer was not made in this case but avoids the issue by complaints about the adequacy of the record and the suggestion that defendants have forfeited the issue. Those arguments were never made by plaintiff. It seems clear from the record that (1) a $200 offer was made, (2) defendants objected that there was no *bona fide* offer prior to initiating the action, and (3) the trial court rejected that argument. Important interests are at stake here. We should not allow plaintiff, or any taking body, to begin these proceedings after making only a token insignificant offer.

Because of the failure of a precondition to the initiation of this action, this action must be dismissed.