2017 IL App (4th) 150807

NOS. 4-15-0807, 4-15-0808, 4-15-0809, 4-15-0810, 4-15-0811, 4-15-0812, 4-15-0819,
4-15-0820, 4-15-0821, 4-15-0822, 4-15-0823, 4-15-0824, 4-15-0825, 4-15-0826, 4-15-0827,
4-15-0828, 4-15-0829, 4-15-0833, 4-15-0834, 4-15-0836, 4-15-0839 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 28, 2017
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) ) | Appeal from Circuit Court of McLean County |
| Plaintiff-Appellee, | ) | No. 14ED27 |
| v.   (No. 4-15-0807) | ) | |
| MONARCH FARMS, LLC; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, | ) ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) ) | No. 14ED43 |
| Plaintiff-Appellee, | ) | |
| v.   (No. 4-15-0808) | ) | |
| JOHN L. BENJAMIN; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, | ) ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) ) | No. 14ED44 |
| Plaintiff-Appellee, | ) | |
| v.   (No. 4-15-0809) | ) | |
| ESTATE OF DOROTHY BENJAMIN; JOHN WHITE, Tenant; NONRECORD CLAIMANTS; UNKNOWN OWNERS; and UNKNOWN HEIRS or LEGATEES, | ) ) ) ) | |
| Defendants-Appellants. | ) ) ) ) ) ) ) ) | |

| | | |
|---|---|---|
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) ) | No. 14ED45 |
| Plaintiff-Appellee, | ) | |
| v.    (No. 4-15-0810) | ) | |
| MONARCH FARMS, LLC; JULIA B. CRESCI, as Trustee Under the Provisions of a Trust Agreement Dated December 26, 2012, Known as the Julia B. Cresci Revocable Living Trust; THE JULIA B. CRESCI REVOCABLE LIVING TRUST; WILLIAM M. BUTLER; WADE E. BUTLER; KATHRYN B. REYNOLDS; JOHN Y. BUTLER; BILL BUTLER; WADE BUTLER; JOHN BUTLER; KATIE MOORE; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) ) | No. 14ED52 |
| Plaintiff-Appellee, | ) | |
| v.    (No. 4-15-0811) | ) | |
| MARGOT Y. RUDESILL, as Trustee Under the Provisions of a Trust Agreement Dated November 10, 1987; TRUST AGREEMENT DATED NOVEMBER 10, 1987; KURT RUDESILL, Tenant; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, | ) ) ) ) ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) ) | No. 14ED53 |
| Plaintiff-Appellee, | ) | |
| v.    (No. 4-15-0812) | ) | |
| KENT MURPHY; LINDA MURPHY; METROPOLITAN LIFE INSURANCE COMPANY, as Mortgagee; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, | ) ) ) ) | |
| Defendants-Appellants. | ) | |
| _____ | ) ) ) ) ) ) ) | |

ENBRIDGE PIPELINE (ILLINOIS), LLC,                    )    No. 14ED19
n/k/a Illinois Extension Pipeline                     )
Company, LLC,                                         )
          Plaintiff-Appellee,                )
          v.      (No. 4-15-0819)     )
ROSEMARY KING, as Trustee of the Trust Under the      )
Last Will and Testament of Allan King; THE TRUST      )
UNDER THE LAST WILL AND TESTAMENT OF                  )
ALLAN KING; DAVID A. KING, Individually and           )
d/b/a King Brothers; JOHN J. KING, Individually and   )
d/b/a King Brothers; NONRECORD CLAIMANTS;             )
UNKNOWN OWNERS;  and UNKNOWN HEIRS                     )
and LEGATEES,                                         )
          Defendants-Appellants.             )
_____     )
ENBRIDGE PIPELINE (ILLINOIS), LLC,                    )    No. 14ED07
n/k/a Illinois Extension Pipeline                     )
Company, LLC,                                         )
          Plaintiff-Appellee,                )
          v.      (No. 4-15-0820)     )
CATHERINE JORDAN KELLER; PATRICIA                     )
JORDAN; CARL D. REUM, Individually and d/b/a          )
Reum Brothers Farm; ROGER L. REUM, Individually       )
and d/b/a Reum Brothers Farm; NONRECORD               )
CLAIMANTS; and UNKNOWN OWNERS,                        )
          Defendants-Appellants.             )
_____     )
ENBRIDGE PIPELINE (ILLINOIS), LLC,                    )
n/k/a Illinois Extension Pipeline                     )    No. 14ED09
Company, LLC,                                         )
          Plaintiff-Appellee,                )
          v.      (No. 4-15-0821)     )
DORIS J. GRUNLOH, as Trustee of the Doris J.          )
Grunloh Revocable Living Trust Dated May 26, 2000,    )
and Individually as Life Tenant; DORIS J. GRUNLOH     )
REVOCABLE LIVING TRUST; GREGORY                       )
GRUNLOH; DOUGLAS GRUNLOH; SCOT                        )
GRUNLOH; TODD GRUNLOH; 1ST FARM                       )
CREDIT SERVICES, as Mortgagee; FARM CREDIT            )
SERVICES OF WEST CENTRAL ILLINOIS, as                 )
Mortgagee; NONRECORD CLAIMANTS; and                   )
UNKNOWN OWNERS,                                       )
          Defendants-Appellants.             )
                                                      )
                                                      )
                                                      )

- 3 -

ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED24
n/k/a Illinois Extension Pipeline )
Company, LLC, )
        Plaintiff-Appellee, )
          v.        (No. 4-15-0822) )
ULEVIA H. PROSSER, as Trustee of the Ulevia H. )
Prosser Living Trust, Dated January 27, 1998; THE )
ULEVIA H. PROSSER LIVING TRUST DATED )
JANUARY 27, 1998; RAYMOND DEAN PROSSER, )
as Trustee of the Raymond Dean Prosser Living Trust )
Dated January 27, 1998; BUSEY BANK, as )
Mortgagee; NONRECORD CLAIMANTS; and )
UNKNOWN OWNERS, )
        Defendants-Appellants. )
_____ )

ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED26
n/k/a Illinois Extension Pipeline )
Company, LLC, )
        Plaintiff-Appellee, )
          v.        (No. 4-15-0823) )
TERRENCE G. KILLIAN and TIMOTHY A. )
KILLIAN, as Co-Trustees of the Tom and Jean Killian )
Family Trust Dated April 24, 2009; TOM AND JEAN )
KILLIAN FAMILY TRUST DATED APRIL 24, )
2009; THE DEPARTMENT OF REVENUE, as )
Mortgagee; NONRECORD CLAIMANTS; and )
UNKNOWN OWNERS, )
        Defendants-Appellants. )
_____ )
) No. 14ED12
ENBRIDGE PIPELINE (ILLINOIS), LLC, )
n/k/a Illinois Extension Pipeline )
Company, LLC, )
        Plaintiff-Appellee, )
          v.        (No. 4-15-0824) )
LESLIE DEAN TROYER; MARY TERESA )
TROYER; FIRST NATIONAL BANK OF )
SULLIVAN, as Mortgagee; NONRECORD )
CLAIMANTS; and UNKNOWN OWNERS, )
        Defendants-Appellants. )
_____ )
)
)
)
)
)
)
)

| | | |
|---|---|---|
| | ) | No. 14ED17 |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, | ) | |
| n/k/a Illinois Extension Pipeline | ) | |
| Company, LLC, | ) | |
|       Plaintiff-Appellee, | ) | |
|       v.      (No. 4-15-0825) | ) | |
| ROBERT J. KING, as Trustee of the Robert J. King | ) | |
| Declaration of Trust; THE ROBERT J. KING | ) | |
| DECLARATION OF TRUST; MARY E. SWEENEY; | ) | |
| ANN M. HARVEY; STEPHEN E. KING; DAVID A. | ) | |
| KING, Individually and d/b/a King Brothers; JOHN J. | ) | |
| KING, Individually and d/b/a King Brothers; | ) | |
| NONRECORD CLAIMANTS; and UNKNOWN | ) | |
| OWNERS, | ) | |
|       Defendants-Appellants. | ) | |

ENBRIDGE PIPELINE (ILLINOIS), LLC,    )  No. 14ED33
n/k/a Illinois Extension Pipeline    )
Company, LLC,    )
      Plaintiff-Appellee,    )
      v.      (No. 4-15-0826)    )
TIMOTHY A. KILLIAN; PEOPLES BANK OF    )
LEXINGTON, ILLINOIS, as Mortgagee;    )
NONRECORD CLAIMANTS; and UNKNOWN    )
OWNERS,    )
      Defendants-Appellants.    )

ENBRIDGE PIPELINE (ILLINOIS), LLC,    )  No. 14ED36
n/k/a Illinois Extension Pipeline    )
Company, LLC,    )
      Plaintiff-Appellee,    )
      v.      (No. 4-15-0827)    )
C&C WEBBER PROPERTIES, INC.; MARK    )
FREED; NONRECORD CLAIMANTS; and    )
UNKNOWN OWNERS,    )
      Defendants-Appellants.    )

ENBRIDGE PIPELINE (ILLINOIS), LLC,    )  No. 14ED38
n/k/a Illinois Extension Pipeline    )
Company, LLC,    )
      Plaintiff-Appellee,    )
      v.      (No. 4-15-0828)    )
KILLIAN FARMS, INC.; MK FARMS;    )
NONRECORD CLAIMANTS; and UNKNOWN    )
OWNERS,    )
      Defendants-Appellants.    )

|                                                                 |                  |
|-----------------------------------------------------------------|------------------|
|                                                               ) | No. 14ED39       |
| ENBRIDGE PIPELINE (ILLINOIS), LLC,                            ) |                  |
| n/k/a Illinois Extension Pipeline                            ) |                  |
| Company, LLC,                                                ) |                  |
|       Plaintiff-Appellee,       ) |                  |
|       v.   (No. 4-15-0829) ) |          |
| AL KILLIAN; MK FARMS; NONRECORD                              ) |                  |
| CLAIMANTS; and UNKNOWN OWNERS,                               ) |                  |
|       Defendants-Appellants.    ) |                  |
| _____            ) | No. 14ED40       |
| ENBRIDGE PIPELINE (ILLINOIS), LLC,                          ) |                  |
| n/k/a Illinois Extension Pipeline                           ) |                  |
| Company, LLC,                                               ) |                  |
|       Plaintiff-Appellee,      ) |                  |
|       v.   (No. 4-15-0833) ) |          |
| AL KILLIAN, as Trustee of a Trust Agreement Dated           ) |                  |
| September 10, 1997, Known as the Al Killian Trust;          ) |                  |
| THE AL KILLIAN TRUST, Dated September 10,                   ) |                  |
| 1997; MK FARMS, INC.; NONRECORD                             ) |                  |
| CLAIMANTS; and UNKNOWN OWNERS,                              ) |                  |
|       Defendants-Appellants.   ) |                  |
|                                                             ) |                  |
| _____            ) |                  |
| ENBRIDGE PIPELINE (ILLINOIS), LLC,                          ) | No. 14ED41       |
| n/k/a Illinois Extension Pipeline                           ) |                  |
| Company, LLC,                                               ) |                  |
|       Plaintiff-Appellee,      ) |                  |
|       v.   (No. 4-15-0834) ) |          |
| KORTE FARM PARTNERSHIP TRUST, Dated                         ) |                  |
| December 26, 2011; NONRECORD CLAIMANTS;                     ) |                  |
| and UNKNOWN OWNERS,                                         ) |                  |
|       Defendants-Appellants.   ) |                  |
|                                                             ) |                  |
| _____            ) |                  |
| ENBRIDGE PIPELINE (ILLINOIS), LLC,                          ) | No. 14ED46       |
| n/k/a Illinois Extension Pipeline                           ) |                  |
| Company, LLC,                                               ) |                  |
|       Plaintiff-Appellee,      ) |                  |
|       v.   (No. 4-15-0836) ) |          |
| BETTY M. BITTNER, as Trustee of the Betty Bittner           ) |                  |
| Revocable Trust Dated June 7, 2008; THE BETTY              ) |                  |
| BITTNER REVOCABLE TRUST DATED JUNE 7,                      ) |                  |
| 2008; VICTOR W. BITTNER, as Trustee of the Victor          ) |                  |
| W. Bittner Revocable Trust Dated June 7, 2008; THE         ) |                  |
| VICTOR W. BITTNER REVOCABLE TRUST                          ) |                  |
| DATED JUNE 7, 2008; NONRECORD                              ) |                  |
| CLAIMANTS; and UNKNOWN OWNERS,                             ) |                  |
|       Defendants-Appellants.  ) |                  |

|                                                          | ) No. 14ED49 |
| ENBRIDGE PIPELINE (ILLINOIS), LLC,                       | ) |
| n/k/a Illinois Extension Pipeline                         | ) |
| Company, LLC,                                            | ) |
|                     Plaintiff-Appellee,                  | ) |
|                v.        (No. 4-15-0839)                 | ) |
| BRYAN K. HOGGINS; NATIONAL CITY BANK,                    | ) |
| Mortgagee; BANK OF NEW YORK MELLON                       | ) |
| CORPORATION; TRUSTEE UNDER THE                           | ) |
| POOLING AND SERVICE AGREEMENT,                           | ) Honorable |
| Mortgagee; NONRECORD CLAIMANTS; and                      | ) Paul G. Lawrence, |
| UNKNOWN OWNERS,                                          | ) Judge Presiding. |
|                     Defendants-Appellants.               | ) |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Holder White and Pope concurred in the judgment and opinion.

**OPINION**

¶ 1 In April 2014, the Illinois Commerce Commission (Commission) granted plaintiff, Enbridge Pipeline (Illinois), LLC, now known as the Illinois Extension Pipeline Company (IEPC), eminent-domain authority to acquire easements over certain real estate for the planned construction of an approximately 170-mile liquid petroleum (oil) pipeline project known as the Southern Access Extension (SAX).

¶ 2 During the months of June and July 2014, IEPC filed separate complaints for "condemnation of permanent and temporary easements for common-carrier pipeline" (condemnation complaints) against the following defendants: (1) Monarch Farms, LLC (McLean County case No. 14-ED-27, this court's case No. 4-15-0807); (2) John L. Benjamin (McLean County case No. 14-ED-43, this court's case No. 4-15-0808); (3) the Estate of Dorothy Benjamin and John White (McLean County case No. 14-ED-44; this court's case No. 4-15-0809); (4) Monarch Farms, LLC, Julia B. Cresci, the Julia B. Cresci Revocable Living Trust, William M. Butler, Wade E. Butler, Kathryn B. Reynolds, John Y. Butler, Bill Butler, Wade Butler, John Butler, and Katie Moore (McLean County case No. 14-ED-45, this court's case No. 4-15-0810);

(5) Margot Y. Rudesill, the Trust Agreement dated November 10, 1987, and Kurt Rudesill (McLean County case No. 14-ED-52, this court's case No. 4-15-0811); (6) Kent Murphy, Linda Murphy, and Metropolitan Life Insurance Company (McLean County case No. 14-ED-53, this court's case No. 4-15-0812); (7) Rosemary King, the Trust Under the Last Will and Testament of Allan King, and David A. King and John J. King, both individually and d/b/a King Brothers (McLean County case No. 14-ED-19, this court's case No. 4-15-0819); (8) Catherine Jordan Keller, Patricia Jordan, and Carl D. Reum and Roger L. Reum, both individually and d/b/a Reum Brothers Farm (McLean County case No. 14-ED-07, this court's case No. 4-15-0820); (9) Doris J. Grunloh, Doris J. Grunloh Revocable Living Trust, Gregory Grunloh, Douglas Grunloh, Scot Grunloh, Todd Grunloh, 1st Farm Credit Services, and Farm Credit Services of West Central Illinois (McLean County case No. 14-ED-09, this court's case No. 4-15-0821); (10) Ulevia H. Prosser, the Ulevia H. Prosser Living Trust, Raymond Dean Prosser, and Busey Bank (McLean County case No. 14-ED-24, this court's case No. 4-15-0822); (11) Terrence G. Killian, Timothy A. Killian, Tom and Jean Killian Family Trust, and the Department of Revenue (McLean County case No. 14-ED-26, this court's case No. 4-15-0823); (12) Leslie Dean Troyer, Mary Teresa Troyer, and First National Bank of Sullivan (McLean County case No. 14-ED-12, this court's case No. 4-15-0824); (13) Robert J. King, the Robert J. King Declaration of Trust, Mary E. Sweeney, Ann M. Harvey, Stephen E. King, and David A. King and John J. King, both individually and d/b/a King Brothers (McLean County case No. 14-ED-17, this court's case No. 4-15-0825); (14) Timothy A. Killian and Peoples Bank of Lexington, Illinois (McLean County case No. 14-ED-33, this court's case No. 4-15-0826); (15) C&C Webber Properties, Inc., and Mark Freed (McLean County case No. 14-ED-36, this court's case No. 4-15-0827); (16) Killian Farms, Inc., and MK Farms (McLean County case No. 14-ED-38, this court's case No. 4-15-

0828); (17) Al Killian and MK Farms (McLean County case No. 14-ED-39, this court's case No. 4-15-0829); (18) Al Killian, the Al Killian Trust, and MK Farms, Inc. (McLean County case No. 14-ED-40, this court's case No. 4-15-0833); (19) Korte Farm Partnership Trust (McLean County case No. 14-ED-41, this court's case No. 4-15-0834); (20) Betty M. Bittner, the Betty Bittner Revocable Trust, Victor W. Bittner, and the Victor W. Bittner Revocable Trust (McLean County case No. 14-ED-46, this court's case No. 4-15-0836); and (21) Bryan K. Hoggins, National City Bank, Bank of New York Mellon Corporation, and Trustee under the Polling and Service Agreement (McLean County case No. 14-ED-49, this court's case No. 4-15-0839) (collectively, landowners).

¶ 3        IEPC's condemnation complaints sought (1) right-of-way and easement interests in landowners' respective properties and (2) determinations as to just compensation IEPC owed to landowners for its property interests. In response, each landowner filed a "traverse and motion to dismiss" (traverse motions), seeking dismissal of IEPC's condemnation complaints. Following a November 2014 hearing, the trial court denied landowners' traverse motions.

¶ 4        In September 2014, a jury was empanelled to consider (1) IEPC's condemnation complaints against landowners in McLean County case Nos. 14-ED-27, 14-ED-43, 14-ED-44, 14-ED-45, 14-ED-52, and 14-ED-53 and (2) landowners' consolidated damages counterclaim. Prior to opening statements, the trial court granted IEPC's motion to exclude landowners' controlled expert witnesses. Thereafter, IEPC moved for directed verdicts on its condemnation complaints. Following argument, the court (1) granted directed verdicts in IEPC's favor as to the six landowners and (2) awarded landowners just compensation totaling $124,000.

¶ 5        At an October 2015 pretrial hearing involving the remaining landowners, the trial court granted IEPC's motion *in limine*, which barred landowners from providing expert or lay

witness opinion testimony as to just compensation in connection with IEPC's condemnation complaints. Thereafter, the parties agreed that the court could conduct a stipulated bench trial on IEPC's condemnation complaints. Subsequent events that occurred during the bench trial prompted the court to (1) grant IEPC's motion for a directed verdict and (2) award landowners just compensation totaling $233,500.

¶ 6        Landowners appeal, raising numerous claims that challenge the trial court's rulings. For the reasons that follow, we vacate the trial court's denial of landowners' traverse motions and remand with directions for further proceedings.

¶ 7                                I. BACKGROUND

¶ 8        The issues presented in this appeal concern the trial court's rulings on the following issues: (1) IEPC's condemnation suit, which includes landowners' claims regarding the court's evidentiary rulings and (2) landowners' traverse motions. The following chronological discussion is tailored to those two issues.

¶ 9                              A. Procedural History

¶ 10        In *Enbridge Energy (Illinois), LLC v. Kuerth*, 2016 IL App (4th) 150519, ¶¶ 6-23, 69 N.E.3d 287, and *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2017 IL App (4th) 150544, ¶¶ 6-23, this court chronicled the extensive procedural history regarding IEPC's intent to (1) construct, operate, and maintain the SAX project under section 15-401 of the Common Carrier by Pipeline Law (220 ILCS 5/15-401 (West 2006)) and (2) acquire, when necessary, private property under eminent-domain authority to install the SAX project as authorized by section 8-509 of the Public Utilities Act (220 ILCS 5/8-509 (West 2006)). In this case, we provide only a truncated synopsis to place landowners' claims in context.

¶ 11                1. *IEPC's Application for a Certificate in Good Standing*
                       *and Eminent-Domain Authority*

¶ 12            In August 2007, IEPC applied for a certificate in good standing, seeking the Commission's authorization to (1) construct, operate, and maintain the SAX project and (2) acquire, when necessary, private property under eminent-domain authority. Specifically, IEPC sought (1) a 60-foot wide permanent easement right-of-way for the pipeline and (2) an additional 60-foot temporary easement to facilitate construction.

¶ 13            In July 2009, the Commission granted IEPC a certificate in good standing, which authorized construction of the SAX project. The Commission, however, denied IEPC's request for eminent-domain authority, urging, instead, that IEPC continue negotiations with recalcitrant landowners who had declined IEPC's compensation offers. The Commission advised IEPC that it could renew its request for eminent-domain authority by demonstrating that it had made reasonable attempts to obtain the requisite easements through good-faith negotiations.

¶ 14            Some affected landowners (intervenors) appealed the Commission's grant of a certificate in good standing, and this court affirmed. *Pliura Intervenors v. Illinois Commerce Comm'n*, 405 Ill. App. 3d 199, 200, 942 N.E.2d 576, 578 (2010) (*Intervenors I*). Specifically, we rejected intervenors' argument that the Commission erred by determining that (1) IEPC was fit, willing, and able to construct, operate, and maintain an oil pipeline and (2) a public need existed for the pipeline. *Intervenors I*, 405 Ill. App. 3d at 208, 942 N.E.2d at 584.

¶ 15            2. *IEPC's Renewed Petition for Eminent-Domain Authority*

¶ 16            In July 2013, IEPC renewed its request for eminent-domain authority, seeking to condemn specific tracts of land traversed by the planned SAX project route because the owners of those respective properties had either (1) refused to negotiate with IEPC or (2) declined IEPC's compensation offers despite extensive negotiations.

¶ 17            Following a December 2013 administrative hearing, an administrative law judge

(ALJ) recommended that the Commission grant IEPC eminent-domain authority. In April 2014, the Commission accepted the ALJ's recommendation and granted IEPC eminent-domain authority. In so doing, the Commission explained that the grant of a request for eminent-domain authority under section 8-509 of the Public Utilities Act requires "a utility [to] show that it made a reasonable attempt to acquire the property at issue." Intervenors affected by the Commission's grant of eminent-domain authority appealed, and this court affirmed. *Pliura Intervenors v. Illinois Commerce Comm'n*, 2015 IL App (4th) 140592-U (*Intervenors II*). In affirming the Commission's authorization, we rejected intervenors' argument that the grant of eminent-domain authority was not supported by substantial evidence that IEPC had engaged in good-faith negotiations. *Id.*

¶ 18                    3. *IEPC's Motion To Reopen*

¶ 19          In May 2014, IEPC filed a "Motion to Reopen and Amend Order Concerning Diameter of the [SAX project]," requesting an amendment to the July 2009 certificate in good standing that the Commission issued. IEPC sought to reduce the pipe diameter of the SAX project from 36 to 24 inches, explaining that uncertain economic conditions and market demand for a different grade of crude oil caused IEPC to reevaluate the initial parameters of the SAX project. In December 2014, the ALJ recommended that the Commission grant IEPC's amendment, subject to certain conditions. The Commission later determined that public convenience and necessity required the issuance of an amended certificate to authorize a 24-inch pipeline. Intervenors appealed, and this court affirmed the Commission's order. *Pliura Intervenors v. Illinois Commerce Comm'n*, 2016 IL App (4th) 150084-U (*Intervenors III*).

¶ 20          At the time of the traverse and condemnation proceedings in the instant cases, (1) this court had published *Intervenors I*, which affirmed the Commission's July 2009 grant of a

- 12 -

certificate in good standing issued to IEPC; (2) *Intervenors II*—which challenged the Commission's grant of eminent-domain authority to IEPC—was pending before this court; and (3) the parties were aware that pending before the Commission was IEPC's motion to amend the certificate in good standing to reflect the installation of a 24-inch diameter pipeline instead of a 36-inch diameter pipeline, which this court had yet to affirm in *Intervenors III*.

¶ 21         B. IEPC's Final Offers to Landowners and IEPC's Subsequent
                        Condemnation Complaints

¶ 22         In May 2014, IEPC made final offers to each landowner in exchange for a permanent easement and a separate temporary easement to be used during construction of the SAX project. In total, IEPC sought (1) permanent easements traversing approximately 53.12 acres of landowners' respective parcels and (2) temporary easements traversing approximately 71.76 acres of landowners' respective parcels. In exchange for its aggregate land interests, IEPC offered landowners total compensation of $1,344,145.

¶ 23         The following month—after landowners did not respond to IEPC's final offers—IEPC filed the condemnation complaints at issue, seeking to obtain right-of-way and easement interests in landowners' respective properties and to determine just compensation for both interests. Appended to IEPC's motion was the Commission's (1) July 2009 order, which granted IEPC authorization to construct the SAX project and (2) April 2014 order, which granted IEPC eminent-domain authority.

¶ 24                        C. Landowners' Traverse Motions

¶ 25         To facilitate the reader's understanding of a traverse motion, we provide the following synopsis of the motion's purpose:

          " 'A traverse and motion to dismiss challenge plaintiff's right to condemn
          defendants' property. [Citations.] It is settled law in Illinois that when a traverse is

filed, the burden is on the plaintiff to make a *prima facie* case of the disputed allegations. [Citations.] A *prima facie* case for the necessity of a condemnation is made by introducing a resolution or ordinance of the governing body which makes a finding that the condemnation is necessary. [Citations.] The agency that has been granted the power of eminent domain, rather than the court, has the authority to decide whether the exercise of the power is necessary to achieve an authorized purpose. Absent a clear abuse of this authority, the court will not inquire into the need or propriety of its exercise. [Citations.] Accordingly, where plaintiff establishes a *prima facie* case, it becomes the burden of defendant to show that there was an abuse of discretion by the governing board. [Citations.]' " *Kuerth*, 2016 IL App (4th) 150519, ¶ 51, 69 N.E.3d 287 (quoting *Lake County Forest Preserve District v. First National Bank of Waukegan*, 154 Ill. App. 3d 45, 51, 506 N.E.2d 424, 428 (1987)).

¶ 26                              1. *The Parties' Filings*

¶ 27      In July 2014, landowners filed separate traverse motions, challenging IEPC's right to condemn a portion of their respective parcels to install and maintain the SAX project. In particular, each landowner alleged that the following circumstances required dismissal of IEPC's condemnation complaints:

"2. *** [T]he property sought to be acquired *** is not necessary or convenient for the purpose for which it is sought to be taken.

3. *** [T]he amount of property sought to be taken *** is in excess of [IEPC's] needs.

4. [IEPC] does not seek to use the property sought *** for a public

purpose.

> 5. *** [T]here has been no bona fide attempt to agree with [landowners] as to the just compensation and damages to be paid for the property sought to be taken.

> 6. *** [T]he project for which [IEPC] seeks to acquire [landowners' property] does not constitute a public convenience or necessity."

(Per the parties' agreement, in August 2014, the trial court consolidated landowners' cases.)

¶ 28      In September 2014, IEPC filed a response, alleging, in pertinent part, as follows:

> "[I]t is clear that [landowners' traverse motions are] almost entirely an effort to re-litigate issues that were already considered and resolved by the Commission and the Fourth District Appellate Court. [Landowners'] request that [the trial court] sit in review of the *** appellate court, which already decided the issues of 'public need' and 'public convenience and necessity', is entirely improper."

IEPC also argued that landowners were (1) "estopped from contesting the 'public need' and 'public convenience and necessity' issues" affirmed by this court in *Intervenors I* and (2) the claims raised in landowners' traverse motions were "an impermissible collateral attack on the Commission's orders."

¶ 29      2. *The Hearing on Landowners' Traverse Motions*

¶ 30      At the November 2014 hearing, landowners made the following arguments in support of their traverse motions:

> "[Landowners'] position [is] that a traverse motion *** is an evidentiary hearing where [IEPC] has the burden to go forward, present evidence, and offer testimony that is subject to cross-examination. It is also [landowners'] understanding that

*** if [IEPC satisfies its] burden to show a *prima facie* case that testimony supports the premise that [IEPC] should have eminent domain and [IEPC] build[s] a *prima facie* case, then [landowners] have the ability to rebut that with testimony.

[Landowners] have *** witnesses ready, willing, and able to testify *** to rebut [IEPC's] case. It is [landowners'] understanding [that] the [trial] court does not intend to entertain any witnesses but instead just simply [rule based] on affidavits [that] have been filed. *** [Landowners] would like to submit an offer of proof, [but] it is [landowners'] understanding *** that the court will not entertain offers of proof on this, given the fact that [the court] intends to treat [landowners' traverse motions] as a [section] 2-619[(a)(9) motion to dismiss] hearing and just rule on the affidavits.

For that reason, [landowners] will rest on what [they] have filed in this case[.]"

(A motion to dismiss filed under section 2-619(a)(9) of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619(a)(9) (West 2014)), "admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint [that] bars or defeats the cause of action." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31, 988 N.E.2d 984.)

¶ 31        In response to landowners' explanation, IEPC informed the trial court that it was relying, in pertinent part, on arguments IEPC made at an October 2014 hearing. (The October 2014 hearing pertained to different groups of similarly situated McLean County landowners, who are not parties to this appeal. The issue before the court during the October 2014 hearing

- 16 -

concerned IEPC's objection to the landowners' request for discovery prior to conducting a traverse hearing. In support of its objection, IEPC made arguments concerning the purpose of a traverse hearing that IEPC relied upon in the instant case. See *Enbridge Pipeline (Illinois), LLC v. Temple*, 2017 IL App (4th) 150346, ¶¶ 33, 91-95 (in which this court considered arguments raised by the similarly situated landowners at the October 2014 hearing)).

¶ 32　　　　Our review of the arguments raised at the October 2014 hearing shows that IEPC argued generally that because a traverse motion is essentially a section 2-619(a)(9) motion to dismiss, landowners were required—but failed—to raise an affirmative matter that defeated IEPC's condemnation complaints. IEPC also argued that landowners were collaterally estopped from challenging the Commission's (1) July 2009 grant of a certificate in good standing to IEPC, which authorized construction of the SAX project and (2) April 2014 order, which granted IEPC eminent-domain authority.

¶ 33　　　　In dismissing landowner's traverse motions in the instant case, the trial court found, in pertinent part, the following: (1) landowners were collaterally estopped from challenging the "public need, convenience, and use" underpinning the Commission's July 2009 order authorizing IEPC to construct the SAX project, which the trial court noted this court had affirmed on appeal, and (2) landowners had failed to assert an affirmative matter outside the complaint that barred IEPC's condemnation complaint as required by section 2-619(a)(9) of the Civil Code. The court then clarified that it was also denying landowners' request to make an offer of proof regarding their witnesses' expected rebuttal evidence.

¶ 34　　　　　　D. The Filing and Proceedings Pertaining to IEPC's
Condemnation Complaints

¶ 35　　　　　　　1. *Landowners' Amended Counterclaim*

¶ 36　　　　In December 2014, landowners filed a consolidated "counterclaim for damages to

the remainder," which they later amended. Landowners' March 2015 amended counterclaim sought compensation from IEPC for the "damages directly suffered" by landowners to the remainder of their respective properties as a direct result of the impending installation of the SAX project. In addition to those damages, landowners asserted the following:

> "[T]he presence of hazardous materials pipeline upon the property *** and the terms, conditions, safety precautions, access rights, use restrictions, dangers, and stigma associated with a pipeline right-of-way grant will cause substantial, irreparable, and unavoidable damage to the remainder of the property as well as any property contiguous to the taken/damaged property[.]"

¶ 37                     2. *The Hearings on IEPC's Motions in Limine*

¶ 38        At a September 2015 hearing, the trial court considered 29 motions *in limine* filed by IEPC pertaining to six parcels the parties referred to as "residential cases" (McLean County case Nos. 14-ED-27, 14-ED-43, 14-ED-44, 14-ED-45, 14-ED-52, and 14-ED-53). The parties referred to the remaining parcels "agricultural cases." In the interest of brevity, we provide only the motions *in limine* pertinent to the resolution of this appeal.

¶ 39                     i. Carlisle Kelly, Daniel Summann, and Scott Cleve

¶ 40        IEPC requested that the trial court bar the testimony of Carlisle Kelly, Daniel Summann, and Scott Cleve, whom landowners disclosed as "controlled expert witnesses" as defined by Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1 2007). See Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007) (defining a controlled expert witness as a "party's retained expert" and stating the mandatory disclosure requirements that the party calling the expert must satisfy). IEPC alleged that Kelly, Summann, and Cleve were not professional appraisers qualified to provide expert opinions on the fair-market value of real estate. Instead, Kelly and Summann were

- 18 -

expected to testify about their personal experience with an IEPC-owned, above-ground pipeline located on their respective properties. Cleve was expected to testify to "drainage problems in another county." IEPC argued that such testimony was "irrelevant, speculative, and prejudicial." The court agreed with IEPC and barred the testimony of Kelly, Summann, and Cleve.

¶ 41                                    ii. Landowners

¶ 42        In December 2014, landowners disclosed that "each individual [landowner], or their respective trustees and beneficiaries in the case of incorporeal [parties] are expected to offer opinions, as well as facts, with respect to the value of the [residential] property involved in the taking" as a controlled expert witness as defined by Rule 213(f)(3).

¶ 43        In April 2015, landowners in the residential cases also served IEPC with separate Rule 213(f)(1) disclosures, identifying landowners who intended to provide lay witness opinion testimony. See Ill. S. Ct. R. 213(f)(1) (eff. Jan. 1, 2007) ("A 'lay witness' is a person giving only fact or lay opinion testimony."). Landowners' Rule 213(f)(1) disclosures noted, in pertinent part, the following:

> "[Landowners' lay witness] opinions are further based on the risk inherently created by the presence of an oil pipeline, which [each landowner] has researched, and the stigma and fear associated with oil pipelines. [Each landowner] is of the opinion that the safety and environmental risks associated with the pipeline will devalue the remainder property."

In addition, each landowner affirmed that based on a review of the "Enbridge Contractor Program Safety Manual, 2013 Edition," pipeline maintenance and testing, specifically, hydrostatic testing, "will pose a safety issue for areas outside of the easement area[, which each landowner] believes *** will likely create [fear] and stigma associated with the pipeline and

negatively impact the remainder value of the property."

¶ 44     At the September 2015 hearing on its motions *in limine*, IEPC urged the trial court to bar landowners' opinions because landowners (1) were not qualified to provide expert valuation opinions under Rule 213(f)(3) and (2) based their lay witness opinions on improper factors. Following further argument, the court granted IEPC's motion "in its entirety."

¶ 45          E. The Proceedings Conducted on IEPC's Condemnation
                    Complaints and Subsequent Proceedings

¶ 46                         1. *The Residential Cases*

¶ 47     In September 2015, the parties and trial court empanelled a jury to determine the just compensation IEPC owed to the six landowners in the residential cases. Thereafter, the court scheduled a hearing to consider, in part, three motions filed by IEPC, seeking to bar landowners' appraisal experts Vic Armstrong, Marty Rave, and Michael McCann. In December 2014, landowners disclosed Armstrong, Rave, and McCann as their controlled expert witnesses as provided by Rule 213(f)(3). The substance of their respective expert opinions concerned just compensation owed to landowners for IEPC's property interests. In that regard, landowners' experts were expected to testify as to the fair-market value of (1) IEPC's permanent easement, (2) IEPC's temporary easement, and (3) the damages to the remainder of the respective parcels after installation of the SAX project.

¶ 48     At the September 2015 hearing on IEPC's motions—which took place prior to opening statements—IEPC argued that the trial court should bar the expected opinion testimony of landowners' controlled expert witnesses because the "common thread" throughout was that Armstrong, Rave, and McCann based their valuations regarding the fair-market value of landowners' parcels on improper elements. In particular, IEPC asserted that each expert factored into their valuations (1) the danger of leaks, (2) fear associated with an underground pipeline,

and (3) temporary interference with farming operations, which IEPC posited rendered their entire valuations incompetent and, therefore, inadmissible.

¶ 49    IEPC also noted that later in December 2014, landowners supplemented their initial disclosures of Armstrong and McCann to include their shared belief that "the pipeline will carry a very negative statement with potential home buyers, including worries about safety issues, explosions, environmental issues, pipeline leaks, and other hassles related to the easement obligations." As to Rave, IEPC argued that his valuations were also based on a land option that the trial court had previously barred. (The parties referred to the land option as the "Rudesill option.") On this point, landowners conceded that Rave's valuations considered the barred Rudesill option.

¶ 50    In addition, IEPC informed the trial court that, in January 2015, landowners delivered a universal serial bus (USB) drive containing over 7000 pages of information. Landowners claimed that the USB drive contained McCann's work file, which provided, in pertinent part, comparable market sales data that McCann used to formulate his valuations of landowners' respective parcels. IEPC alleged that the USB drive contained "some 1,300 sales from McLean County." In February 2015, IEPC requested that landowners disclose the specific comparable sales McCann used in his valuation calculations, but IEPC did not receive a response. IEPC argued that McCann's valuations were devoid of any comparable sales.

¶ 51    Following further argument, the trial court barred Armstrong, Rave, and McCann from providing valuation testimony as controlled expert witnesses under Rule 213(f)(3), finding, in pertinent part, that landowners' valuation experts considered improper factors. In particular, the court ruled that the consideration of (1) temporary interference with farming operations, (2) negative stigmas, (3) oil leaks and spills, and (4) the failure to provide comparable sales rendered

- 21 -

the valuations proffered by Armstrong, Rave, and McCann incompetent and inadmissible.

¶ 52     After denying landowners' oral request to suspend the proceedings to permit the acquisition of new controlled expert witnesses, IEPC began its case in chief and presented a "Stipulation of Value Testimony of [IEPC's] Appraisal Experts," signed by both parties, that the trial court accepted. The stipulation, which was based on valuations provided by IEPC's expert appraisers, valued just compensation for the six parcels at $124,000. Thereafter, IEPC rested its case. Landowners then rested their case without providing any evidence. IEPC subsequently made an oral motion for a directed finding that the court immediately granted.

¶ 53                                   2. *The Agricultural Cases*

¶ 54     At an October 2015 pretrial hearing concerning the landowners in the agricultural cases, the trial court considered IEPC's motion to bar landowners' testimony as to fair-market value and remainder damage. Upon a query from the court, both parties relied on the respective arguments raised at the September 2015 proceedings. The court granted IEPC's motion *in limine*, finding that landowners did not meet the qualifications of controlled expert witnesses as defined by Rule 213(f)(3) and, thus, were not qualified to render such opinions. In addition, the court also ruled that landowners were barred from providing lay opinion testimony on valuation or remainder value because individual landowners either (1) were not properly disclosed, (2) admitted in their deposition that they had no opinion regarding fair-market value or remainder damages, (3) based their valuation opinions on speculation, or (4) considered improper elements in formulating their opinions.

¶ 55     After the parties agreed that the trial court could conduct a bench trial on IEPC's condemnation complaints, IEPC began its case in chief and the court admitted a "Stipulation of Value Testimony of [IEPC's] Appraisal Experts," signed by both parties. The stipulation, which

was based on valuations provided by IEPC's expert appraisers, valued just compensation for the parcels in the agricultural cases at $233,500. Thereafter, IEPC rested its case. Landowners then rested their case without providing any evidence. IEPC subsequently made an oral motion for a directed finding, which the trial court granted.

¶ 56    This appeal followed.

¶ 57                                II. ANALYSIS

¶ 58    Landowners' claims concern the following two distinct matters: (1) IEPC's condemnation suit, which includes the trial court's evidentiary rulings, and (2) the court's denial of landowners' traverse motions. Prior to addressing the merits of those claims, we first explain the unusual procedural posture of this appeal.

¶ 59                          A. The Procedural Posture

¶ 60    While the parties' appeal in the instant case was pending before this court, we decided *Kuerth*, 2016 IL App (4th) 150519, 69 N.E.3d 287. In that case, Livingston County landowners challenged IEPC's authority to condemn a portion of their respective parcels for the SAX project. In January 2017, this court *sua sponte* directed the parties in the instant case to file supplemental briefs consistent with the views we expressed in *Kuerth*. The parties have done so. In the interest of brevity, we briefly summarize *Kuerth* to provide context.

¶ 61                       B. This Court's Decision in *Kuerth*

¶ 62    In *Kuerth*, we considered the propriety of the trial court's rulings regarding (1) evidentiary matters prior to the condemnation proceeding and (2) the denial of the landowners' traverse motions, in which the landowners sought to challenge IEPC's interest in condemning a portion of their property to install the SAX project. *Id.* ¶ 85.

¶ 63    As to the trial court's evidentiary ruling, we rejected the landowners' specific

argument (among many presented) that the court abused its discretion by barring the landowners' testimony concerning just compensation. *Id*. ¶ 95.

¶ 64 Prior to reaching the merits of the trial court's rulings on the landowners' traverse motions, we briefly discussed the rationale underpinning the legislature's January 2007 repeal of Article VII of the Civil Code (Pub. Act 94-1055, § 95-1-5 (eff. Jan. 1, 2007) (repealing 735 ILCS 5/7-101 to 7-129)), which had previously governed eminent-domain proceedings, and its replacement, the Eminent Domain Act (735 ILCS 30/1-1-1 to 99-5-5 (West 2014)). *Kuerth*, 2016 IL App (4th) 150519, ¶ 125, 69 N.E.3d 287. We noted that the Eminent Domain Act added a new provision, section 5-5-5(c), which stated, in pertinent part, the following:

" 'Evidence that the [Commission] has granted a certificate or otherwise made a finding of public convenience and necessity for an acquisition of property (or any right or interest in property) for private ownership or control (including, without limitation, an acquisition for which the use of eminent domain is authorized under the Public Utilities Act ***) to be used for utility purposes creates a rebuttable presumption that such acquisition of that property (or right or interest in property) is (i) primarily for the benefit, use, or enjoyment of the public and (ii) necessary for a public purpose.' " *Id*. (quoting 735 ILCS 30/5-5-5(c) (West 2014)).

¶ 65 This court then discussed the operation of rebuttable presumptions in civil proceedings and the amount of evidence required to rebut a presumption. *Id*. ¶¶ 131-33. We noted that in addition to typical presumptions, which require "sufficient" evidence to rebut, trial courts have occasionally imposed a greater burden of production upon a party challenging a presumption, which is sometimes referred to as a strong presumption. *Id*. ¶ 133. "Due to

compelling policy considerations, a party challenging a strong presumption must present clear and convincing evidence to rebut the presumption." *Id*. ¶ 134. From that premise, we then outlined the rationale underlying this court's holding that the Commission's determinations were entitled to strong deference, which could be rebutted only with clear and convincing evidence to the contrary. *Id*. ¶ 138. Specifically, we held as follows:

> "[T]he Commission, having been vested with authority by the legislature to resolve the technical issues that come before it, and presumably possessing the expertise to do so, should similarly be accorded deference with regard to the issues concerning the construction of a pipeline in this state. Deeming the Commission's findings worthy of a strong presumption is merely an acknowledgment of that expertise and would serve as a caution to trial courts to not easily disregard the finding of the Commission. Strong public policy favors that the landowners should be required to present clear and convincing evidence before the applicable presumptions burst." *Id*. ¶ 140.

¶ 66 Although not statutorily mandated, we held further that the Commission's determination that IEPC had negotiated in good faith with landowners, which was also based on the Commission's presumed expertise in determining whether to grant an entity eminent-domain authority, warranted "substantial deference." *Id*. ¶ 148.

¶ 67 In *Kuerth*, we concluded that the court's denial of the landowners' traverse motions effectively deprived them of the ability to (1) rebut the aforementioned statutory presumptions and (2) refute the Commission's determination that IEPC had negotiated in good faith. *Id*. In so concluding, we vacated the trial court's denial of the landowners' traverse motions and remanded the matter back to the trial court for the limited purpose of conducting a proper

- 25 -

traverse hearing. *Id*. ¶ 151. We then provided authority for our decision to retain jurisdiction of the matters presented despite our remand. *Id*. ¶¶ 154-58.

¶ 68          We reaffirm our holding in *Kuerth*, and because we find the facts presented in the instant case strikingly similar, we deem *Kuerth* applicable to the claims raised in this appeal.

¶ 69                              C. IEPC's Condemnation Suit

¶ 70          In their original brief to this court, landowners argued that the trial court abused its discretion by barring (1) evidence about potential dangers associated with the SAX project such as hydrostatic testing, oil spills, oil leaks, the stigma associated with oil pipelines, fire dangers, and the potential for explosions; (2) the Rudesill option; (3) landowners' testimony regarding just compensation; and (4) landowners' controlled expert witnesses. As noted previously, in January 2017, we essentially requested landowners to revisit their initial arguments in light of *Kuerth*. In their supplemental brief, landowners assert that the evidence and testimony regarding the just compensation they sought to introduce in the instant case was either "vaguely similar to issues raised" in *Kuerth*, distinguishable from *Kuerth*, or *Kuerth* was "not directly applicable."

¶ 71          In the instant case—as in *Kuerth*—the sole overarching issue throughout concerned IEPC's intent to acquire right-of-way and easements interests over certain real estate for the planned construction of the SAX project. To achieve that objective, IEPC attempted to negotiate with holdout landowners regarding the fair-market value of its interests in their respective properties. In June 2014—after settlement negotiations with landowners failed—IEPC executed the eminent-domain authorization the Commission granted by filing condemnation complaints, which sought a jury's determination as to just compensation for its interests in landowners' parcels. Although landowners filed a counterclaim on the issue of damages to the

remainder of their respective properties following installation of the SAX project, that damage claim was merely a subcategory of just compensation the jury had yet to determine.

¶ 72     In June 2014—after IEPC filed its condemnation complaints—the only issue to be decided was the fair-market value of IEPC's interests in landowners' properties—that is, the just compensation that IEPC owed to landowners for its property interests. See *Enbridge Pipelines (Illinois), L.L.C. v. Troyer*, 2015 IL App (4th) 150334, ¶ 23, 38 N.E.3d 1282 (Once "IEPC *** established its condemnation rights," the only issue remaining was "to set just compensation."). Indeed, the primary goal in a partial condemnation—such as this one—"is to provide compensation that is 'just' in the sense that it places the landowner in the same economic position after the condemnation as before." *City of Springfield v. West Koke Mill Development Corp.*, 312 Ill. App. 3d 900, 904, 728 N.E.2d 781, 785 (2000). "Given the technical and particularized process employed to calculate the just compensation that a condemnor should provide for its interest in a condemnee's property, a condemnation proceeding essentially becomes a contest on the credibility of the parties' experts." *Hoke*, 2017 IL App (4th) 150544, ¶ 108.

¶ 73     In *Kuerth*, this court affirmed the trial court's judgment, which barred landowners' testimony as well as their expert witnesses. We held that their respective opinions were based on fear and stigma, which was "subjective, speculative, and improper evidence" that clearly failed to meet "minimum standards of reliability" because they included "improper elements of damage." *Kuerth*, 2016 IL App (4th) 150519, ¶¶ 95, 114, 117, 69 N.E.3d 287. Despite landowners' claims to the contrary, we conclude that the instant case is strikingly similar to *Kuerth*.

¶ 74     In this case, landowners essentially contend that the trial court abused its

discretion by barring their proposed valuation testimony as well as the expected testimony of their disclosed controlled expert witnesses, Armstrong, Rave, and McCann. We disagree.

¶ 75 "Generally ***, evidentiary motions, such as motions *in limine*, are directed to the trial court's sound discretion. A trial court's ruling on such motions will not be disturbed on review absent an abuse of that discretion." *In re Leona W.*, 228 Ill. 2d 439, 460, 888 N.E.2d 72, 83 (2008). "The threshold for finding an abuse of discretion is high." *Id*. "A trial court will not be found to have abused its discretion with respect to an evidentiary ruling unless it can be said that that no reasonable [person] would take the view adopted by the court." *Id*.

¶ 76 Over 55 years ago, the supreme court held that "where a witness has considered improper elements of damage, his testimony will be deemed incompetent, [citations] even though in part based upon proper elements." *Trunkline Gas Co. v. O'Bryan*, 21 Ill. 2d 95, 100, 171 N.E.2d 45, 48-49 (1960). This proposition of law remains valid. See *Department of Transportation v. Rasmussen*, 108 Ill. App. 3d 615, 625, 439 N.E.2d 48, 56 (1982) ("Where a witness has considered improper elements of damage, his testimony will be deemed incompetent, even though in part based upon proper elements."); see also *Enbridge Energy, Limited Partnership v. Fry*, 2017 IL App (3d) 150765, ¶ 56 (citing *Trunkline* approvingly for the proposition that "the [valuation] testimony of a witness, who ha[s] considered an improper element of damage, would be deemed incompetent").

¶ 77 We agree with the trial court that Armstrong, Rave, and McCann based their valuations on numerous improper factors. These inappropriate factors included fear and stigma associated with oil pipelines, potential for oil leaks, and the unfounded speculation that hydrostatic testing would pose unspecified safety concerns. Given our agreement with the court's evidentiary rulings, which essentially barred all of landowners' expected valuation testimony, we

- 28 -

also see no reason to disturb the court's grant of directed findings and verdicts in the residential and agricultural cases.

¶ 78 We note, in passing, that landowners also raise the argument that the trial court abused its discretion by barring land valuation testimony that was based, in part, on the Rudesill option. As best as we can tell, the Rudesill option was a land-option agreement between an undisclosed land developer and landowners, Margot and Kurt Rudesill (McLean County case No. 14-ED-52, this court's case No. 4-15-0811). Landowners represented to the court that "developers went to the Rudesills and purchased an option at $30,000 an acre" for a portion of the Rudesills' property. IEPC represented to the court that the initial Rudesill option had expired on December 1, 2014. IEPC then informed the court, as follows:

"In 2015, several days before *** Rave testified, there was an amendment to the option [for] no additional consideration. It's now an option between *** Rave, who's an expert witness in the case, and Margot Rudesill, who's a defendant in the case. *** [I]t contains flowery language about how *** Rave wouldn't be interested [in exercising the option] if the pipeline's going to be built."

¶ 79 We omitted an earlier comprehensive discussion of the Rudesill option because, despite their claim, landowners have failed to direct this court's attention to the exact language of either of the supposed Rudesill options. Indeed, in IEPC's brief to this court, it correctly notes that "landowners never provide a direct citation to the Rudesill option or any statement of its terms." In their reply brief, landowners do not address their glaring omission. Given their failure, we reiterate the following:

"A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented *** and it is not a repository

into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error [citation]." (Internal quotation marks omitted.) *Country Mutual Insurance Co. v. Styck's Body Shop, Inc.*, 396 Ill. App. 3d 241, 254-55, 918 N.E.2d 1195, 1207 (2009).

See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (arguments in an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on").

¶ 80     Accordingly, because landowners' argument concerning the Rudesill option was deficient, they have forfeited this issue. See *Country Mutual*, 396 Ill. App. 3d at 255, 918 N.E.2d at 1207 (recognizing the defendant's forfeiture because it failed to provide a cohesive argument on appeal).

¶ 81     Although our earlier analysis indicates approval of the trial court's rulings (1) barring landowners' disclosed valuation testimony and (2) granting directed findings and verdicts in IEPC's favor, we are not at this point affirming the trial court's judgment, for reasons we later explain.

¶ 82                         D. Landowners' Traverse Motions

¶ 83     We previously provided a summary of our decision in *Kuerth*, which we deemed applicable to landowners' claims regarding the November 2014 traverse hearing at issue in this case. In the interest of brevity, we need not revisit (1) the legislature's rationale for enacting a new statutory section to govern eminent-domain issues, (2) the history and operation of rebuttable presumptions, (3) the amount of evidence necessary to rebut the type of presumption at issue, or (4) that the Commission's good-faith finding—which is a prerequisite for granting an

entity eminent-domain authority—was entitled to substantial deference from the trial court. For our purposes, it is sufficient to reiterate our overarching holding in *Kuerth*, as follows:

> "Accordingly, based on the aforementioned recitation of the purpose of a traverse hearing and the plain language of section 5-5-5(c) of the Act, we hold that when the Commission granted IEPC a certificate in good standing to construct the SAX project and, later, granted IEPC eminent-domain authority to complete the SAX project, IEPC enjoyed two rebuttable presumptions—that is, that IEPC's interest in landowners' respective properties was (1) primarily for the benefit, use, or enjoyment of the public; and (2) necessary for a public purpose. For reasons that we have already mentioned, in addition to those two rebuttable presumptions, the Commission's determination that IEPC engaged in good-faith negotiations, which was a necessary finding to its grant of eminent-domain authority in IEPC's favor, warrants substantial deference by the trial court. Thus, after filing their respective traverse motions, landowners were entitled to present relevant evidence to rebut and refute, respectively, those three issues." *Kuerth*, 2016 IL App (4th) 150519, ¶ 148, 69 N.E.3d 287.

¶ 84                                  1. *The Standard of Review*

¶ 85         When reviewing the denial of a traverse motion, this court considers whether the trial court's determination was against the manifest weight of the evidence. *City of Chicago v. Zappani*, 376 Ill. App. 3d 927, 931, 877 N.E.2d 17, 21 (2007). "Specifically, the manifest weight of the evidence standard is applied to the trial court's finding that a condemnor acted in good faith." *Id*. at 931-32, 877 N.E.2d at 21-22.

¶ 86                              2. *Landowners' Claims of Error*

¶ 87        In their supplemental brief to this court, landowners contend that the trial court erroneously considered the traverse hearing as a motion to dismiss under section 2-619(a)(9) of the Civil Code. We agree.

¶ 88        During the November 2014 hearing on landowners' traverse motions, IEPC argued that this court's decision in *Koke Mill* stood for the proposition that a traverse motion is essentially a motion to dismiss under section 2-619(a)(9) of the Civil Code. In *Koke Mill*, this court affirmed the trial court's denial of Koke Mill's traverse and motion to dismiss because "Koke Mill did not support its [traverse motion] with any evidence of the [City of Springfield's] lack of [a] good faith [offer]." *Koke Mill*, 312 Ill. App. 3d at 908, 728 N.E.2d at 787.

¶ 89        We reject the notion that *Koke Mill* stands for the broad proposition that *all* traverse hearings are akin to a motion to dismiss under section 2-619(a)(9) of the Civil Code. We note that *Koke Mill*, which was decided seven years before the legislature's January 2007 enactment of the Eminent Domain Act and 15 years before our aforementioned overarching holdings in *Kuerth*, involved the exercise of municipal condemnation powers under article VII of the Civil Code, which has since been repealed. Specifically, *Koke Mill* involved a landowner's challenge to the City of Springfield's power to condemn private property for the public purpose of widening a city road. *Koke Mill*, 312 Ill. App. 3d at 902, 728 N.E.2d at 783.

¶ 90        Here, the Commission, with the presumed expertise that it possesses as an agency, exercised its condemnation powers for the purpose of acquiring private property for private ownership and control, which is governed by section 5-5-5(c) of the Eminent Domain Act. See 735 ILCS 30/5-5-5(b), (c) (West 2014) (promulgating different standards when a condemning authority seeks to acquire property for public use versus private use, respectively). We reject IEPC's interpretation of *Koke Mill* and reiterate and reaffirm our holding that a traverse hearing

is a limited proceeding that affords a landowner the first and only opportunity to challenge a condemnor's authority and, thus, "is akin to a hybrid proceeding in which specific presumptions must be rebutted by landowners challenging the condemnation filing at issue." *Kuerth*, 2016 IL App (4th) 150519, ¶ 169, 69 N.E.3d 287.

¶ 91 In its supplemental brief to this court, IEPC does not address landowners' specific section 2-619(a)(9) claim, despite its representations to the trial court during the November 2014 hearing. Instead, IEPC responds that (1) the trial court correctly conducted the traverse proceedings in accordance with *Kuerth*, (2) landowners failed to rebut the statutory presumptions of public use and public necessity, (3) landowners "presented nothing" to refute the Commission's determination that IEPC had negotiated with landowners in good faith, and (4) remand is not warranted because landowners are attempting to litigate issues that this court noted in *Kuerth* were "not the proper subjects of a traverse hearing" (*id.* ¶ 164). IEPC misconstrues the narrow issue before us.

¶ 92 Our narrow scope of review concerns whether the trial court afforded landowners their only *opportunity* to challenge the Commission's condemnation powers as provided by section 5-5-5(c) of the Eminent Domain Act. We mean specifically the statutory presumptions of public use, public necessity, and the substantial deference afforded the Commission's determination that IEPC made good-faith offers to landowners. Thus, neither the strength of the Commission's presumptions nor the landowners' likelihood of success in rebutting the established presumptions are at issue before us.

¶ 93 At the November 2014 hearing, the trial court effectively deprived landowners of the opportunity to call witnesses in support of their traverse motions because the court considered the hearing akin to a section 2-619(a)(9) motion to dismiss. Indeed, the court even

refused landowners' offer of proof, which would merely have disclosed to the trial court and opposing party the nature of the offered evidence and would have allowed this court to determine on appeal whether the exclusion of the evidence was proper. See *People v. Pelo*, 404 Ill. App. 3d 839, 875, 942 N.E.2d 463, 494 (2010); *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 451, 818 N.E.2d 713, 719 (2004). In so doing, the court effectively deprived landowners of the opportunity to challenge the condemnation of their respective parcels of land afforded them under section 5-5-5(c) of the Eminent Domain Act.

¶ 94 The following passage from our decision in *Kuerth* fully applies to the instant case:

"The Commission's July 2009 grant of a certificate in good standing and April 2014 grant of eminent-domain authority and the rebuttable presumptions those decisions generated in IEPC's favor were merely the first steps in this process. The trial court's dismissal of landowners' traverse motions effectively deprived landowners of exercising the option of presenting relevant evidence to (1) rebut the presumptions of public use and public necessity that IEPC possessed when it filed its condemnation suit and (2) refute the Commission's determination that IEPC had engaged in good-faith negotiations when the Commission granted IEPC eminent-domain authority." *Kuerth*, 2016 IL App (4th) 150519, ¶ 151, 69 N.E.3d 287.

¶ 95 Accordingly, we vacate the trial court's denial of landowners' respective traverse motions and remand for limited proceedings.

¶ 96 Although we have also expressed our approval of the trial court's rulings (1) barring landowners' disclosed valuation testimony and (2) granting directed verdicts in IEPC's

favor, we have not yet affirmed, reversed, or modified the trial court's judgment. Our ultimate determination in this case will occur only after the trial court conducts a proper traverse hearing in accordance with this court's direction, certifies the record to this court, and the parties have had an opportunity to supplement their briefs to this court with regard to the trial court's expedited traverse ruling. Accordingly, because no judgment has been rendered by this court, (1) no mandate need issue and (2) this court retains general jurisdiction. More important, upon the filing of this opinion, the trial court is vested with the authority to conduct an expedited hearing for this limited purpose in accordance with the following directions we now provide. See *id.* ¶¶ 152-58.

¶ 97                                             E. Directions on Remand

¶ 98            As previously noted, the issues presented in the instant case are similar to those we addressed in *Kuerth*. After this court vacated the trial court's denial of landowners' traverse motions in *Kuerth*, we provided the trial court comprehensive guidance regarding the appropriate procedure to employ on remand. *Id.* ¶¶ 164-80. Given the length of time and amount of resources already expended in litigating the construction of the SAX project—and in the interest of judicial economy and finality—we provide the following directions.

¶ 99                                   1. *Limited Scope of the Traverse Hearing*

¶ 100           As previously noted, in June 2014—when IEPC filed its complaints for condemnation against landowners' respective properties—IEPC enjoyed the rebuttable presumptions that its interests in landowners' respective tracts of land were (1) primarily for the benefit, use, or enjoyment of the public and (2) necessary for a public purpose. In addition to those presumptions, the Commission determined that eminent-domain authority in IEPC's favor was warranted because good-faith negotiations between IEPC and landowners had failed. Thus,

landowners were entitled to present relevant evidence to rebut these specific presumptions and to refute the good-faith finding. We note, however, that any attempt by landowners to call into question the Commission's (1) July 2009 certificate in good standing, (2) April 2014 grant of eminent-domain authority, or (3) December 2014 amendment to the July 2009 certificate in good standing would not be appropriate because these matters are not the proper subjects of a traverse hearing. On remand, the trial court should decline to consider them.

¶ 101        Based on the aforementioned discussion of the proper scope of a traverse hearing, the trial court on remand should consider only two matters, which are landowners' claims challenging (1) the rebuttable presumptions of public use and public necessity and (2) the Commission's determination as to good faith, as generally set forth in paragraphs 2 through 6 of landowners' July 2014 traverse motions.

¶ 102                              2. *Discovery and Proceedings on Remand*

¶ 103        Consistent with the limited nature of a traverse motion, as well as our limited remand, we direct the trial court to assume control of the discovery proceedings in the instant case by requiring any discovery request to set forth with specificity (1) the information the party seeks, (2) the alleged source of that information, and (3) the relevance of the information sought, given the limited remand in this case. The aforementioned listing, however, does not preclude the court from imposing further discovery requirements.

¶ 104        The trial court should determine whether any discovery sought is appropriate and should deny any request to depose or submit interrogatories that seek information the court deems irrelevant or that already exists in the record or is already in the possession of the party making the discovery request. If the court determines that discovery—strictly limited to the aforementioned issues—is warranted, it shall actively supervise to ensure discovery occurs in an

efficient and expeditious manner.

¶ 105    Given the extensive litigation that has already occurred in this matter and our explicit direction that the trial court conduct an expedited traverse hearing limited to the claims at issue, the court should inquire whether any information sought by landowners through discovery already exists in the record in this matter. For instance, in *Intervenors II*, in which this court affirmed the Commission's grant of eminent-domain authority to IEPC, John McKay, IEPC's manager of land services, provided detailed testimony about the procedures IEPC employed to identify, contact, educate, and negotiate good-faith offers IEPC extended to recalcitrant landowners. See *Intervenors II*, 2015 IL App (4th) 140592-U, ¶¶ 23-26 (summarizing McKay's testimony before the ALJ). Landowners, who participated in these proceedings, were permitted to cross-examine McKay. Thus, any claim by landowners that they now need to depose McKay to refute that IEPC's condemnation suit was filed after good-faith efforts to negotiate had failed should be met with skepticism by the trial court. The court should permit IEPC to challenge landowners' additional requests for discovery by demonstrating that the information sought is either irrelevant to the traverse proceedings or cumulative because the additional discovery sought already appears in the record or is in the possession of landowners or their counsel.

¶ 106    On remand, the trial court should conduct a two-stage traverse hearing. At the first stage, the court should focus solely on whether landowners can present (1) clear and convincing evidence to rebut the presumptions of public use and public necessity and (2) sufficient evidence to refute the substantial deference afforded the Commission's good-faith determination. If the court determines that landowners have done so, then the court should proceed to the second stage, which would contemplate a further hearing where the parties could

present evidence in support of their respective positions.

¶ 107    We direct the trial court to schedule and otherwise supervise discovery and conduct further proceedings regarding a traverse hearing in an expedited fashion. If, in the court's judgment, landowners fail to (1) rebut the presumptions of public use and public necessity in IEPC's favor or (2) successfully refute the Commission's good-faith determination, the court should so rule as to those specific issues, deny landowners' traverse motions, certify the record, and return the matter back to this court. If landowners present sufficient evidence to rebut the presumptions or to refute the good-faith determination, the court should then conduct a further hearing as to those claims on the traverse motions.

¶ 108    If the court finds in favor or one or more landowners, then it should enter an order denying IEPC's condemnation motion as to that landowner or those landowners. Conversely, if the court rules in IEPC's favor following the traverse hearing, it should enter an order to that effect. Regardless of the decision rendered, if a traverse hearing is conducted, the court should again certify the record in this matter to this court so that we may then resolve this appeal.

¶ 109    If the trial court finds that landowners have overcome the first-stage hurdle, then second-stage proceedings regarding the traverse hearing shall be tried by the court instead of a jury. In this regard, we note that section 10-5-5 of the Eminent Domain Act, which is entitled, "Compensation; Jury," states that "[w]hen compensation is so made by the condemning authority, any party, upon application, may have a trial by jury to ascertain the just compensation to be paid." 735 ILCS 30/10-5-5 (West 2014). No such provision entitling landowners to a jury determination in a traverse hearing appears in section 5-5-5 of the Eminent Domain Act, which governs traverse hearings and appears immediately preceding section 10-5-5 of the Eminent Domain Act. See *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1056, 827 N.E.2d 949, 957 (2005)

(a tenet of statutory construction provides that if one section of a statute contains a specific provision, the absence of that same provision from a similar section is significant to show a different legislative intent for the statutory sections at issue). Further, our research has disclosed no case in which the issues presented in a traverse motion were resolved by a jury.

¶ 110                                    3. *The Timeline on Remand*

¶ 111          As we noted in *Kuerth*, 2016 IL App (4th) 150519, ¶ 177, 69 N.E.3d 287, the appellate court, in other contexts, has remanded a cause to conduct an expedited hearing on a limited issue and imposed specific directions regarding when the trial court was expected to accomplish the appellate court's direction. For example, in *People v. Bohanan*, 243 Ill. App. 3d 348, 612 N.E.2d 45 (1993), this court remanded the matter to the trial court for the limited purpose of conducting an expedited hearing in accordance with *Batson v. Kentucky*, 476 U.S. 79 (1986). In so doing, the appellate court provided the following directions on remand:

> "Upon completion of the preceding steps, the trial court must make both credibility and factual determinations based on the proffered evidence. These findings, including the record, shall be filed with the clerk of this court within 60 days of the filing of this opinion. This court retains jurisdiction for the purpose of reviewing the trial court's determinations pursuant to *Batson*. Both defendant and the State will be permitted to submit supplemental briefs relative to this issue in this court." *Bohanan*, 243 Ill. App. 3d at 352, 612 N.E.2d at 48.

See also *People v. Fellers*, 2016 IL App (4th) 140486, ¶ 36 (while retaining jurisdiction over the case, the appellate court remanded to the trial court for the limited purpose of conducting an appropriate hearing on the defendant's ineffective-assistance-of-counsel claim); *Fleming v. Moswin*, 2012 IL App (1st) 103475-U, ¶¶ 45-46, 976 N.E.2d 447 (while retaining jurisdiction

over the case, the appellate court remanded to the trial court for the limited purpose of conducting a *Batson* hearing within 60 days and requiring the parties to file responses within 14 days of the trial court's ruling on remand).

¶ 112 Unlike *Bohanan*, we prefer to forego mandating that the trial court conduct the traverse hearing within a specific time frame. Instead, we leave these timing issues to the trial court's discretion. However, given this court's direction that the trial court should conduct an expedited hearing limited to landowners' traverse motions, we expect that the trial court will do so at the earliest possible opportunity.

¶ 113 Because we have concluded that the trial court failed to conduct a proper traverse hearing, we vacate the court's traverse judgment and remand this cause for the limited purpose of conducting an *expedited* traverse hearing in compliance with this court's aforementioned directions. In so ordering, this court retains jurisdiction to review the trial court's ruling following remand.

¶ 114 Within 21 days following the trial court's certification of the record to this court, any party who is aggrieved by the trial court's rulings on remand may submit to this court a supplemental brief addressing solely any issues related to those rulings. Thereafter, the opposing party or parties shall have 21 days to file any response. This court will not grant any request for an extension of time to file supplemental briefs. Arguments on issues not directly related to the traverse hearing on remand may not be raised without this court's permission. In due course, this court will issue its decision on all issues raised in this appeal.

¶ 115        III. CONCLUSION

¶ 116 For the foregoing reasons, we vacate the trial court's traverse judgment and remand with directions for further proceedings consistent with the views expressed herein.

¶ 117        Vacated; cause remanded with directions.